**BERNARD et al., Appellants;  Erie Insurance Company, Appellee,**

v.

**CORDLE, Appellee.**

[Cite as *Bernard v. Cordle* (1996), 116 Ohio App.3d 116.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 96APE04–442.

Decided Dec. 3, 1996.

*Lamkin, Van Eman, Trimble, Beals & Rourke* and *Tim Van Eman,* for appellants.

*John C. Nemeth & Associates, David A. Caborn* and *John C. Nemeth,* for appellee Erie Insurance Company.

*Mazanec, Raskin & Ryder Co., L.P.A.,* and *Lynne K. Schoenling,* for appellee Florence E. Cordle.

---

PETREE, Presiding Judge.

This matter is before this court upon the appeal of plaintiffs, Judith A. and Ted Bernard, from the February 14, 1996 decision and March 16, 1996 entry, and an

additional judgment entry filed April 8, 1996 of the Franklin County Court of Common Pleas, which entered summary judgment in favor of intervening plaintiff, Erie Insurance Company, and defendant, Florence E. Cordle, respectively.

The history of this case is as follows: On September 5, 1994, plaintiff Judith Bernard was injured in an accident when her motorcycle was struck by defendant Cordle. Judith's husband, Ted, was also riding a motorcycle and was directly behind Judith at the time of the accident. He witnessed the accident and further witnessed the amputation of Judith's leg at the scene of the crash.

Plaintiffs brought an action against defendant, seeking compensatory damages for the injury to Judith and damages for negligent infliction of emotional distress allegedly sustained by Ted Bernard. Defendant's insurer, Erie Insurance Company ("Erie Insurance"), offered plaintiffs $50,000 in exchange for a complete release. Plaintiffs accepted this $50,000 in exchange for such a release, with the exception of Ted Bernard's claim for negligent infliction of emotional distress.

Erie Insurance then brought a declaratory judgment action to determine whether or not Ted Bernard could recover for his claim of emotional distress pursuant to the language contained in the policy that Erie Insurance had with defendant. All of the parties moved for summary judgment. By journal entry of March 16, 1996, the trial court granted summary judgment in favor of Erie Insurance, finding that the claim for emotional distress was derivative, and, therefore, under the language of the policy, plaintiffs had already received the maximum dollar amount available to them. The court also held that emotional distress did not constitute "bodily injury" as that was defined in the policy.

On April 8, 1996, the trial court granted summary judgment in favor of defendant, finding that Ted Bernard did not have an independent cause of action against defendant for negligent infliction of emotional distress, "as such claim is clearly derivative."

Plaintiffs filed this appeal and assert the following assignments of error for our review [1]:

"[I.] The lower court committed reversible error in granting summary judgment holding that defendant-appellant Ted Bernard does not have a separate, independent, and distinct claim for relief for negligent infliction of emotional distress.

---

1. Apparently defendant also filed a cross-appeal. Her notice of appeal indicates that she is appealing from both the March 16 and April 8, 1996 entries, although the April 8, 1996 entry was in her favor. Given that the brief filed by defendant does not contain any assignments of error and essentially adopts the arguments set forth in plaintiffs' brief, we will consider only the assignments of error presented by plaintiffs.

"[II.] The lower court committed reversible error in granting summary judgment holding that the subject Erie Insurance Company policy does not provide coverage for the negligent infliction of emotional distress claim of defendant-appellant Ted Bernard."

Plaintiffs have also presented the following issues for our review:

"[I.] Whether a claim for negligent infliction of emotional distress is a separate, distinct, and independent cause of action or whether it is merely derivative of a personal injury or death claim. (Assignment of Error Number One.)

"[II.] Whether a claim for negligent infliction of emotional distress is a claim for a separate bodily injury. (Assignment of Error Number Two.)

"[III.] Whether separate claims for personal injury and negligent infliction of emotional distress may be consolidated and restricted to a single per person limit of coverage under a liability policy. (Assignment of Error Number Two.)"

In the first assignment of error, plaintiffs argue that the trial court erred in holding that Ted Bernard does not have a separate, independent, and distinct claim for relief for negligent infliction of emotional distress. We agree.

Although *Schaefer v. Allstate Ins. Co.* (1996), 76 Ohio St.3d 553, 668 N.E.2d 913, involved a loss of consortium claim, we find its reasoning persuasive in this case. In that case, the Ohio Supreme Court noted as follows:

" * * * Even though a loss of consortium claim is derivative in that it is dependent upon the defendant's having committed a legally cognizable tort upon the spouse who suffers bodily injury, *Bowen v. Kil–Kare, Inc.* (1992), 63 Ohio St.3d 84, 93, 585 N.E.2d 384, 392, *it is nonetheless legally separate and independent from the claim of the spouse who suffered the bodily injury. Id.*" (Emphasis added.) *Id.* at 557, 668 N.E.2d at 916.

Ted Bernard's claim for negligent infliction of emotional distress is derivative in the sense that it arose as a result of the bodily injury suffered by his spouse. However, like a claim for loss of consortium, a claim for negligent infliction of emotional distress is a legally separate and independent claim. *Paugh v. Hanks* (1983), 6 Ohio St.3d 72, 6 OBR 114, 451 N.E.2d 759.

Regardless of whether or not insurance coverage exists in this case, Mr. Bernard has a separate, independent, and distinct claim for negligent infliction of emotional distress. The presence or absence of insurance coverage is simply irrelevant to a determination of whether or not Mr. Bernard has a cause of action against defendant.

The trial court found that the negligent infliction of emotional distress claim was a "derivative" claim of Judith Bernard's personal injury claim. Clearly,

whether or not Mr. Bernard's claim is derivative is relevant for purposes of construing the language of the insurance policy. But that is not the issue set forth in the first assignment of error.

Erie Insurance apparently argues that the language of the insurance policy is dispositive of the issues before this court. We cannot agree. Clearly, if defendant had no insurance whatsoever, plaintiffs could still maintain an action against defendant individually for damages sustained. The fact that there is an insurance policy involved simply goes to *who* will pay for the damages: defendant or her insurance company.

Accordingly, this court finds that the trial court erred in granting summary judgment in favor of defendant Cordle on the negligent infliction of emotional distress claim, and the first assignment of error is hereby sustained.

In the second assignment of error, plaintiffs argue that the trial court erred in granting summary judgment in favor of Erie Insurance and erred in holding that the policy in this case did not provide coverage for the negligent infliction of emotional distress claim of Ted Bernard.

Plaintiffs present two issues in this assignment of error: (1) whether a claim for negligent infliction of emotional distress is a claim for a separate bodily injury, and (2) whether separate claims for personal injury and negligent infliction of emotional distress may be consolidated and restricted to a single per person limit of coverage under a liability policy. As to the first issue, this court has already noted that a claim for negligent infliction of emotional distress is a separate and independent legal claim or cause of action. *Paugh, supra.*

However, one may have a claim for negligent infliction of emotional distress without having suffered any bodily injury whatsoever. See *Schultz v. Barberton Glass Co.* (1983), 4 Ohio St.3d 131, 4 OBR 376, 447 N.E.2d 109, at syllabus. Thus, a claim for infliction of emotional distress does not necessarily involve or constitute a claim for bodily injury.

Plaintiffs argue that the claim for emotional distress is a separate claim that is not derivative and, therefore, Ted Bernard should be entitled to an additional $50,000 under the policy. Plaintiffs further argue that the policy is not limited to damages for bodily injury claims only, because the policy covers "derivative" claims such as a loss of consortium claim. Although we agree that the policy is not limited to claims involving bodily injury only, plaintiffs' argument is not well taken.

The policy provides as follows:

"We will pay all sums you legally must pay as damages caused by an accident covered by this policy * * *.

"Damages *must involve:*

"(1) *bodily injury, meaning physical harm, sickness or disease,* including care, *loss of services* or resultant death * * *[.]" (Page 6 of policy.)

Clearly, the above language provides that the insurer will pay for damages involving bodily injury, loss of consortium and/or wrongful death. In construing the term "bodily injury," several courts have concluded that such a term excludes nonphysical harms such as emotional distress. See *Bowman v. Holcomb* (1992), 83 Ohio App.3d 216, 614 N.E.2d 838; *David v. Nationwide Mut. Ins. Co.* (1995), 106 Ohio App.3d 298, 665 N.E.2d 1171; *Vance v. Sang Chong, Inc.* (Nov. 9, 1990), Lake App. No. 88–L–13–188, unreported, 1990 WL 174121.

■■■ The definition of "damages" set forth in the policy does not include damages for infliction of emotional distress. The language of the policy is clear and unambiguous; thus, those terms must be applied without engaging in any construction. See *Santana v. Auto Owners Ins. Co.* (1993), 91 Ohio App.3d 490, 494, 632 N.E.2d 1308, 1311. This court will not amend the policy language to include damages for emotional distress. See *Ambrose v. State Farm Fire & Cas. Co.* (1990), 70 Ohio App.3d 797, 800, 592 N.E.2d 868, 870–871.

Accordingly, we find that plaintiffs' claim for infliction of emotional distress is not covered by the above definition of "damages." We also find that plaintiffs' claim for emotional distress does not constitute a separate "bodily injury" as that term is defined in the insurance policy. *Bowman, David,* and *Vance, supra.* For that reason, plaintiffs' second assignment of error is overruled.

The second issue presented by the second assignment of error is whether separate claims for personal injury and negligent infliction of emotional distress may be consolidated and restricted to a single per person limit of coverage under a liability policy. The insurance policy provides as follows:

"If an individual's damages derive from bodily injury to another person injured in the accident, we will pay only for such derivative damages within the per PERSON limit available to the person injured in the accident." (Page 7 of policy.)

The trial court found that Ted's emotional distress claim was derivative of Judith's bodily injury claim. It further found that the above restriction was valid and, therefore, held that recovery to plaintiffs was limited to the per person limit of $50,000. The trial court relied on *Dues v. Hodge* (1988), 36 Ohio St.3d 46, 521 N.E.2d 789, paragraph two of the syllabus, and *Tomlinson v. Skolnik* (1989), 44 Ohio St.3d 11, 540 N.E.2d 716, in reaching its decision.

However, *Tomlinson, supra,* and paragraph two of *Dues, supra,* were recently overruled in *Schaefer, supra.*[2] In that case, the Supreme Court found as follows:

---

**2.** The syllabus of the *Schaefer* case provides as follows:

"In answering this question, we must determine the validity, in light of recent case law, of an automobile insurance policy provision which limits recovery for all causes of action arising out of bodily injuries sustained to one person to a single per person limit. For the following reasons, we find such a provision unenforceable. * * *

" * * *

" * * * It is the separate injury which parties to both kinds of claims [wrongful death and loss of consortium] suffer that entitle them to separate per person limits. Thus, we see no valid reason to distinguish between wrongful death claims and loss of consortium claims in personal injury cases. Therefore, we *hold that each person who is covered by an uninsured motorist policy and who is asserting a claim for loss of consortium has a separate claim subject to a separate per person policy limit. A provision in an insurance policy which reaches a contrary result is unenforceable.* Because *Tomlinson* and paragraph two of the syllabus of *Dues* do not comport with the law of this state, *we now expressly overrule them* and return the law to where it was before those cases overruled *Lewis*." (Emphasis added.) *Id.* at 555, 557–558, 668 N.E.2d at 915, 917.

Although the court acknowledged that the claim for loss of consortium arose from the bodily injuries sustained by the spouse, it also found that the claim for loss of consortium constituted a separate compensable injury subject to its own per person limit. *Id.* at 555, 668 N.E.2d at 915.

██ We find the reasoning of the *Schaefer* court to be persuasive to the instant action. Moreover, we see no valid reason to distinguish between a loss of consortium claim and a negligent infliction of emotional distress claim in a personal injury case.

Arguably, an infliction of emotional distress claim is more independent and separate than a loss of consortium/wrongful death claim. Unlike a claim for wrongful death or loss of consortium, the claim of negligent infliction of emotional distress is *not* necessarily dependent upon the defendant's having caused actual physical harm to another person. *Paugh, supra,* 6 Ohio St.3d at 80, 6 OBR at 121, 451 N.E.2d 759. Thus, a claim for negligent infliction of emotional distress is even less "derivative" than its wrongful death/loss of consortium counterparts.

---

"Each person who is covered by an uninsured motorist policy and who is asserting a claim for loss of consortium has a separate claim subject to a separate per person policy limit. A provision in an insurance policy which reaches a contrary result is unenforceable. (*Tomlinson v. Skolnik* [1989], 44 Ohio St.3d 11, 540 N.E.2d 716, and *Dues v. Hodge* [1988], 36 Ohio St.3d 46, 521 N.E.2d 789, paragraph two of the syllabus, overruled.)"

Accordingly, we hold that each person who is covered by an insurance policy who is asserting a claim for negligent infliction of emotional distress has a separate claim subject to a separate per person policy limit, *assuming* that the policy covers such an injury. As noted earlier, the policy in the instant action does not cover damages for infliction of emotional distress. Thus, although we find in plaintiffs' favor on the second issue presented in their second assignment of error, the assignment of error is still overruled because of the language of the insurance policy.

For all of the above reasons, plaintiffs' first assignment of error is sustained, the second assignment of error is overruled, and this matter is reversed and remanded for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

LAZARUS, J., concurs.

TYACK, J., concurs in part and dissents in part.

TYACK, Judge, concurring in part and dissenting in part.

Since I believe that the information before the trial court was insufficient for it to resolve the issue of coverage under the insurance policy in question, I dissent in part.

The majority opinion has appropriately pointed out the portion of the policy which states:

"Damages *must involve:*

"(1) *bodily injury, meaning physical harm, sickness or disease,* including care, *loss of services* or resultant death * * *[.]"

Obviously, the human mind is part of the body. If the mind is injured, then the body is injured. If Mr. Bernard's mind suffered injury as the result of an intense emotional trauma, then he has suffered bodily injury.

The human mind can suffer disease as the result of injuries which are not physical otherwise. For instance, post-traumatic stress disorder has been recognized as a form of mental illness for many years. Post-traumatic stress disorder is diagnosed via the following diagnostic criteria in Diagnostic and Statistical Manual of Mental Disorders (4 Ed.1994) 427, as follows:

"A. The person has been exposed to a traumatic event in which both of the following were present:

"(1) the person experienced, witnessed, or was confronted with an event or events that involved actual or threatened death or serious injury, or a threat to the physical integrity of self or others

"(2) the person's response involved intense fear, helplessness, or horror. * * *

"B.   The traumatic event is persistently reexperienced in one (or more) of the following ways:

"(1) recurrent and intrusive distressing recollections of the event, including images, thoughts, or perceptions.  * * *

"(2) recurrent distressing dreams of the event.  * * *

"(3) acting or feeling as if the traumatic event were recurring (includes a sense of reliving the experience, illusions, hallucinations, and dissociative flashback episodes, including those that occur on awakening or when intoxicated).  * * *

"(4) intense psychological distress at exposure to internal or external cues that symbolize or resemble an aspect of the traumatic event

"(5) physiological reactivity on exposure to internal or external cues that symbolize or resemble an aspect of the traumatic event

"C.   Persistent avoidance of stimuli associated with the trauma and numbing of general responsiveness (not present before the trauma), as indicated by three (or more) of the following:

"(1) efforts to avoid thoughts, feelings, or conversations associated with the trauma

"(2) efforts to avoid activities, places, or people that arouse recollections of the trauma

"(3) inability to recall an important aspect of the trauma

"(4) markedly diminished interest or participation in significant activities

"(5) feeling of detachment or estrangement from others

"(6) restricted range of affect (e.g., unable to have loving feelings)

"(7) sense of a foreshortened future (e.g., does not expect to have a career, marriage, children, or a normal life span)

"D.   Persistent symptoms of increased arousal (not present before the trauma), as indicated by two (or more) of the following:

"(1) difficulty falling or staying asleep

"(2) irritability or outbursts of anger

"(3) difficulty concentrating

"(4) hypervigilance

"(5) exaggerated startle response

"E.   Duration of the disturbance (symptoms in Criteria B, C, and D) is more than 1 month.

"F.   The disturbance causes clinically significant distress or impairment in social, occupational, or other important areas of functioning."

This definition does not exclude post-traumatic stress disorder precipitated by an event such as that suggested in the present litigation.   The recognition of post-traumatic stress disorder by mental health professionals is an acknowledgement that a human brain can be changed without physical touching.

Unfortunately, the record before us is relatively sparse as to the diagnosis of the injuries suffered by Mr. Bernard.   We cannot tell whether his condition is serious enough to warrant a diagnosis of post-traumatic stress disorder or other recognized mental health disorder.   Under the circumstances, I do not feel that any party has provided information which would allow us to resolve the coverage question.   Therefore, I would sustain the second assignment of error and remand the case for further appropriate proceedings so that a more informed determination can be made as to whether or not physical harm, sickness, or disease has resulted from Mr. Bernard's witnessing of his wife's injuries and suffering.   Since a majority of this panel do not agree with sustaining the second assignment of error, I respectfully dissent in part.