ERIE INSURANCE COMPANY, Appellee,

v.

FAVOR et al., Appellants.

[Cite as *Erie Ins. Co. v. Favor* (1998), 129 Ohio App.3d 644.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 97APE12–1693.

Decided Sept. 3, 1998.

*Lamkin, VanEman, Trimble, Beals & Rourke* and *Kenneth S. Blumenthal,* for appellants.

*Buckingham, Doolittle & Burroughs, Frank G. Mazgaj, Robert L. Tucker* and *David J. Hannah,* for appellee.

———

JOHN C. YOUNG, Judge.

Appellants, Hugh M. Favor and Bernadette Favor, appeal from the Franklin County Court of Common Pleas December 4, 1997 judgment entry granting the summary judgment motion of appellee, Erie Insurance Company ("Erie"), and denying appellants' summary judgment motion.

Appellants were insured under an automobile insurance policy on October 3, 1995, when a car, driven by a person unknown, crashed into the living room of the Favor house. The Favors, at home but in another room at the time of the crash, were not physically injured during the crash. Appellants subsequently filed a claim with Erie under their underinsured/uninsured motorist coverage. Appellants claimed injury stemming from the crash in the form of a posttraumatic stress disorder.

An Erie adjuster, Robert Simon, originally made representations to the Favors that the policy would cover their claim for posttraumatic stress disorder or emotional distress. However, upon review of the claim, Erie denied coverage, contending that posttraumatic stress disorder is not a bodily injury and therefore not covered under the policy.

Erie filed a declaratory judgment action in the trial court below, seeking a declaration that the policy does not provide coverage for the Favors' claim of emotional distress. The Favors filed counterclaims against Erie for breach of contract, bad faith, misrepresentation, and loss of consortium stemming from the stress disorder. The parties each filed motions for summary judgment. Appellants now appeal from the trial court's judgment granting summary judgment in favor of appellee and denying appellant's motion.

Appellants assert the following assignment of error:

"The trial court erred when it granted summary judgment to plaintiff."

Appellants present the following five issues for review:

1. Does an uninsured motorist insurance policy provide coverage for a claim of negligent infliction of emotional distress as a matter of law?

2. Is a claim for negligent infliction of emotional distress a claim for bodily injury?

3. Is posttraumatic distress disorder, as a form of emotional distress, a bodily injury defined as physical harm, sickness, or disease?

4. Is an insurance company estopped from denying coverage for emotional distress where an agent of the company made representations that such a claim was covered and the insureds took actions based upon reliance of those representations?

5. Is an insurance company liable for negligent misrepresentation if it denies coverage for claims after making representations that such claims were covered under the policy?

■ On appeal from a granting of summary judgment, our review is *de novo.* Thus, the same standard as articulated in Civ.R. 56 is applied on appeal to determine whether summary judgment was appropriate. *Hounshell v. Am. States Ins. Co.* (1981), 67 Ohio St.2d 427, 433, 21 O.O.3d 267, 271, 424 N.E.2d 311, 314. Under Civ.R. 56, summary judgment is appropriate only where the movant demonstrates that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. Civ.R. 56(C); *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 8 O.O.3d 73, 375 N.E.2d 46. Summary judgment is not to be rendered unless it appears from the evidence that "reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made." Civ.R. 56(C). The nonmoving party is entitled to have the evidence construed most strongly in his or her favor. Civ.R. 56(C); see, also, *Williams v. First United Church of Christ* (1974), 37 Ohio St.2d 150, 66 O.O.2d 311, 309 N.E.2d 924.

Appellants argue that appellee must provide coverage for a claim of negligent infliction of emotional distress because (1) appellants are insured by an Erie uninsured motorist policy, (2) they suffered injury due to the actions of an uninsured motorist, and (3) their claim is recognized by Ohio tort law. *Martin v. Midwestern Group Ins. Co.* (1994), 70 Ohio St.3d 478, 481, 639 N.E.2d 438, 441. See, also, *State Farm Auto. Ins. Co. v. Alexander* (1992), 62 Ohio St.3d 397, 401, 583 N.E.2d 309, 312–313. Ohio courts have indeed recognized the infliction of emotional distress as a compensable claim under Ohio tort law without a showing of contemporaneous physical injury. *Schultz v. Barberton Glass Co.* (1983), 4 Ohio St.3d 131, 4 OBR 376, 447 N.E.2d 109; *Paugh v. Hanks* (1983), 6 Ohio St.3d 72, 6 OBR 114, 451 N.E.2d 759. In *State Farm v. Alexander,* the Ohio Supreme Court held:

"[A]n automobile insurance policy may not eliminate or reduce uninsured or underinsured motorist coverage, required by R.C. 3937.18, to persons injured in a motor vehicle accident, where the claim or claims of such persons arise from

causes of action that are recognized by Ohio tort law." *Id.* at 401, 583 N.E.2d at 312.

The same court also held that, while an insurer may not contractually eliminate or reduce uninsured motorist coverage, any permitted contractual restriction on the coverage mandated by R.C. 3937.18 must comply with the statute's purpose or requirements. *Id .* at 399, 583 N.E.2d at 311–312. The Supreme Court has consistently held that the purpose of uninsured motorist coverage is to protect persons from losses that, because of a tortfeasor's lack of liability, would otherwise go uncompensated. *Martin v. Midwestern Ins.*, at 480, 639 N.E.2d at 440–441. While R.C. 3937.18 does not displace contract law, a party cannot enter into contracts that are contrary to law. *Id.* R.C. 3937.18(A) provides that uninsured and underinsured motorist coverage must be provided with any automobile liability insurance policy to protect against loss for bodily injury, sickness, or disease, including death, caused by the actions of an uninsured or underinsured motorist.

■ The Erie policy contractually limits its scope of coverage to property damage and bodily injury damage. The policy's uninsured motorist endorsement provides that Erie will pay damages for bodily injury that are recoverable against an uninsured motorist. Bodily injury damage is defined as "bodily injury, meaning physical harm, sickness or disease including care, loss of service or resultant death." Upon review, this court finds that the Erie policy section regarding uninsured motorist coverage comports with the requirements of R.C. 3937.18, and is therefore enforceable. *State Farm v. Alexander,* 62 Ohio St.3d at 399, 583 N.E.2d at 311–312.

■ The crux of appellants' argument then revolves around whether post-traumatic stress disorder is a "bodily injury" as defined in the policy. Emotional distress is not a "physical harm," nor is it a "sickness" or "disease" as defined by the policy. See *Reichard v. Nationwide Mut. Fire Ins. Co.* (Dec. 10, 1992), Montgomery App. No. 13392, unreported, 1992 WL 361829; *Heinze v. Liberty Mut. Ins. Co.* (June 7, 1993), Butler App. No. CA92–10–205, unreported, 1993 WL 192909. Taber's Cyclopedic Medical Dictionary (18 Ed.1997) 552 defines "disease" as a pathological condition of the body that presents a group of clinical symptoms or findings and is characterized as something tangible and measurable. *Id.* "Sickness" is defined as a state of being unwell, characterized as an illness of a typically physical nature. *Id.* at 1757.

The court in *Bowman v. Holcomb* (1992), 83 Ohio App.3d 216, 219, 614 N.E.2d 838, 840–841, held that nonphysical injuries are not bodily injuries. That court concluded:

"Based on the commonly accepted definitions of 'bodily injury,' 'sickness' and 'disease,' the judicial trend to exclude non-physical harms such as emotional distress from the term 'bodily injury' and the coverage anticipated * * * we hold that * * * [a] claim for negligent infliction of emotional distress is not a separate 'bodily injury' under the Auto–Owners policy." *Id.* at 220, 614 N.E.2d at 841.

A person, therefore, may have a claim for infliction of emotional distress without having a claim for bodily injury. *Bernard v. Cordle* (1996), 116 Ohio App.3d 116, 120, 687 N.E.2d 3, 5–6. However, nonphysical losses, such as emotional distress or loss of consortium, that are not derived from the physical bodily injury of another may not be compensable under the terms of an uninsured motorist policy. *Id.* at 122, 687 N.E.2d at 7. See, also, *Schaefer v. Allstate Ins. Co.* (1996), 76 Ohio St.3d 553, 557, 668 N.E.2d 913, 916–917; *Bowen v. Kil–Kare, Inc.* (1992), 63 Ohio St.3d 84, 585 N.E.2d 384.

Nonphysical harms such as emotional distress are not "bodily injury" as defined by R.C. 3937.18 and are therefore not covered under the Erie policy. See *Bernard, supra; Hillman v. Hastings Mut. Ins. Co.* (Sept. 22, 1992), Franklin App. No. 92AP–717, unreported, 1992 WL 246031. Thus, appellants' claims of emotional distress are not derived from the bodily injury of another and are not covered under the Erie policy. See *Schaefer, supra.* This court therefore finds that the trial court did not err in determining that appellants' claim for emotional distress was not a bodily injury covered under the policy. Appellants' issues one, two, and three are therefore not well taken.

Finally, appellants' assert that the trial court erred in finding that their claims of estoppel and misrepresentation failed. In Ohio:

"[A] general rule exists which prohibits estoppel and waiver from expanding the coverage of an insurance policy. However, an exception also seems to have developed which allows estoppel and waiver to be asserted when an insurer provides a defense to its insured without reserving its rights to assert a policy defense." *Turner Liquidating Co. v. St. Paul Surplus Lines Ins. Co.* (1994), 93 Ohio App.3d 292, 297, 638 N.E.2d 174, 178.

Appellee, Erie, has asserted a policy defense in its complaint for declaratory action. Therefore, as found by the trial court, the instant case does not involve any recognized exception to the accepted proposition that the doctrine of estoppel cannot extend the coverage contemplated by the policy. Therefore, the trial court did not err in finding that appellee was not estopped from denying coverage in this matter, and appellants' fourth issue is not well taken.

Negligent misrepresentation has been defined as follows:

" 'One who, in the course of his business, * * * or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their *justifiable reliance* upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.' (Emphasis added.)" *Delman v. Cleveland Heights* (1989), 41 Ohio St.3d 1, 4, 534 N.E.2d 835, 838, quoting 3 Restatement of the Law 2d, Torts (1977) 126–127, Section 552 (1).

There is no indication in the record that appellee misrepresented the extent of coverage available to appellants through their policy for the guidance of appellants in their business transactions and that appellants were induced into purchasing the insurance policy in reliance upon the alleged misrepresentations of appellee. See *Turner Liquidating Co. v. St. Paul Surplus Lines Ins. Co.* (1994), 93 Ohio App.3d 292, 638 N.E.2d 174. Further, appellants cannot be said to have reasonably or justifiably relied upon Robert Simmon's assertion of coverage. In fact, the policy itself clearly indicated that the coverage was limited to property damage and bodily injury damage, and did not expressly include emotional distress.

Finally, as noted by the trial court, appellants do not rebut the assertion of appellee that Robert Simmon's representations were not fraudulent, but merely a mistake. There is no showing in the record that appellee failed to exercise reasonable care or competence in obtaining or communicating the policy information to appellants. Appellants, therefore, have not provided evidence that they have a sustainable claim for misrepresentation, and the trial court did not err in its judgment in this regard, and appellants' fifth issue is also not well taken.

For the foregoing reasons, appellant's assignment of error is overruled, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

LAZARUS, J., concurs.

TYACK, J., dissents.

TYACK, Judge, dissenting.

I respectfully disagree with the majority of this panel on a number of key points. I, therefore, dissent.

First, I believe that the traditional mind/body dichotomy is no longer tenable. The human brain is part of the human body. The human brain can be negatively affected without being physically struck. Recent studies of brain activity, using

more sophisticated instruments and measuring devices than previously available, have demonstrated that traumatic events cause physical changes in the brain. Thus, the experiencing of a particularly traumatic event causes physical changes in the brain of the individual who undergoes the experience. The problems the individual suffers later are a result of these changes. In particularly egregious cases, the person may be diagnosed as suffering from posttraumatic stress disorder ("PTSD").

PTSD became a standard diagnosis after the Vietnam War. Prior wars had produced similar conditions in war veterans, but different labels such as "shell shock" had been applied. I believe that PTSD involves bodily injury, including physical harm and disease. PTSD is far more than "emotional distress," an assertion which seems to be implicit in the majority opinion.

The diagnostic criteria for PTSD are set forth in Diagnostic and Statistical Manual of Mental Disorder (4 Ed.1994) 427–429, commonly known as DSM–IV. The criteria are:

"A. The person has been exposed to a traumatic event in which both of the following were present:

"(1) the person experienced, witnessed, or was confronted with an event or events that involved actual or threatened death or serious injury, or a threat to the physical integrity of self or others

"(2) the person's response involved intense fear, helplessness, or horror. * * *

"B. The traumatic event is persistently reexperienced in one (or more) of the following ways:

"(1) recurrent and intrusive distressing recollections of the event, including images, thoughts, or perceptions. * * *

"(2) recurrent distressing dreams of the event. * * *

"(3) acting or feeling as if the traumatic event were recurring (includes a sense of reliving the experience, illusions, hallucinations, and dissociative flashback episodes, including those that occur on awakening or when intoxicated). * * *

"(4) intense psychological distress at exposure to internal or external cues that symbolize or resemble an aspect of the traumatic event

"(5) physiological reactivity on exposure to internal or external cues that symbolize or resemble an aspect of the traumatic event

"(C) Persistent avoidance of stimuli associated with the trauma and numbing of general responsiveness (not present before the trauma), as indicated by three (or more) of the following:

"(1) efforts to avoid thoughts, feelings, or conversations associated with the trauma

"(2) efforts to avoid activities, places, or people that arouse recollections of the trauma

"(3) inability to recall an important aspect of the trauma

"(4) markedly diminished interest or participation in significant activities

"(5) feeling of detachment or estrangement from others

"(6) restricted range of affect (e.g., unable to have loving feelings)

"(7) sense of a foreshortened future (e.g., does not expect to have a career, marriage, children, or a normal life span)

"(D) Persistent symptoms of increased arousal (not present before the trauma), as indicated by two (or more) of the following:

"(1) difficulty falling or staying asleep

"(2) irritability or outbursts of anger

"(3) difficulty concentrating

"(4) hypervigilance

"(5) exaggerated startle response

"E. Duration of the disturbance (symptoms in Criteria B, C, and D) is more than 1 month.

"F. The disturbance causes clinically significant distress or impairment in social, occupational, or other important areas of functioning."

I believe that a person who is appropriately diagnosed as suffering from PTSD is a person who has suffered a bodily injury for purposes of the Erie Insurance Company policy.

If the Erie Insurance Company policy and its definitions cannot be construed as providing coverage for PTSD, then I believe that the policy clearly violates R.C. 3937.18. The Supreme Court of Ohio for several years has read insurance coverage expansively. I see no reason why we should do the opposite and eliminate or curtail coverage for a condition as serious as posttraumatic stress disorder.

In short, I would reverse the judgment of the trial court and remand the case for entry of declaratory judgment on behalf of the Favors. Since the majority does not do so, I dissent.