OPINION
Plaintiffs-appellants, Beverly Howard, personally and as parent and next friend of Rachelle Howard, and Kenneth Howard, personally and as parent and next friend of Ryan Howard, appeal from a judgment of the Franklin County Court of Common Pleas granting the summary judgment motion of defendants-appellees, State Auto Mutual Insurance Company ("State Auto") and American Select Insurance Company ("American").
On December 29, 1994, Beverly Howard sustained severe injuries as a result of a car accident caused by Gail Lininger. Lininger was insured under a policy providing liability coverage with limits of $100,000 per person and $300,000 per accident. On September 13, 1995, in exchange for $98,000 received from Lininger's liability insurer, Howard and her husband Kenneth ("parents") signed a general release discharging Lininger and her insurer from all liabilities arising out of the car accident; their two minor children ("children") did not sign the release. Plaintiffs, who had insurance policies with both defendants, then filed suit against defendants seeking underinsured benefits arising from the injuries Beverly sustained in the car accident, including the loss of consortium claims of Kenneth and the children.
On the parties' cross-motions for summary judgment, the trial court granted defendants' motions, determining that the parents were precluded from recovering underinsured benefits from each defendant by their failure to notify defendants and to obtain defendants' consent before the parents settled with Lininger and her insurer. In addition, the trial court found the children's loss of consortium claims to be derivative. Because the parents' claims failed, the trial court likewise found the children's claims failed.
Plaintiffs timely appeal, assigning the following errors:
 I. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO AMERICAN SELECT INSURANCE COMPANY, ON PLAINTIFFS' REQUEST.
 II. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO STATE AUTO MUTUAL INSURANCE COMPANY AND IN DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT.
In accordance with Civ.R. 56, the evidence must be construed most strongly in favor of the nonmoving party; summary judgment should be granted only if no genuine issue of fact exists, the moving party is entitled to judgment as a matter of law, and reasonable minds can come to but one conclusion, which is adverse to the non-moving party. Harless v. Willis Day Warehousing Co. (1978),54 Ohio St.2d 64. A motion for summary judgment first forces the moving party to inform the court of the basis of the motion and to identify portions in the record which demonstrate the absence of a genuine issue of material fact. Dresher v. Burt (1996), 75 Ohio St.3d 280,296. If the moving party makes that showing, the non-moving party then must produce evidence on any issue for which the party bears the burden of production at trial. Wing v. Anchor Media, Ltd. ofTexas (1991), 59 Ohio St.3d 108, paragraph three of the syllabus (Celotex v. Catrett [1986], 477 U.S. 317, approved and followed).
Preliminarily, we note that because each defendant issued the insurance policy before October 20, 1994, the effective date of S.B. No. 20 that amended R.C. 3937.18, application of the provisions of the two policies is governed by the laws in effect before that date. See Ross v. Farmers Ins. Group of Cos. (1998),82 Ohio St.3d 281. Moreover, because the insurer selects the language of a policy, the insurer bears the responsibility to be specific in its use. Lane v. Grange Mut. Cos. (1989), 45 Ohio St.3d 63
. Where the provisions of an insurance contract are reasonably susceptible of more than one interpretation, both of which are reasonable, they are ambiguous and will be construed strictly against the insurer and liberally in favor of the insured. Id.; United States Fire Ins. Co. v. Ohio High SchoolAthletic Assn. (1991), 71 Ohio App.3d 760.
 AMERICAN SELECT INSURANCE
In their first assignment of error, plaintiffs contend the trial court improperly granted summary judgment in favor of American. Initially, they argue that the insurance policy failed to provide underinsured coverage as required by law, thereby requiring that such coverage be imposed (1) by operation of law, and (2) without terms or conditions that would exclude coverage. See Demetry v. Kim (1991), 72 Ohio App.3d 692.
Contrary to plaintiffs' contentions, American's policy specifically provides that it "will pay compensatory damages that an Insured is legally entitled to recover from the owner or operator of an uninsured/underinsured motor vehicle." (Insuring Agreement, p. 6.) Plaintiffs nonetheless assert that American's policy in actuality fails to provide such coverage because of the definitions American incorporated into its policy. According to the policy terms, no coverage is available if the tortfeasor's liability coverage is equal to the limits of plaintiffs underinsured coverage with American. Absent consideration ofSavoie v. Grange Mut. Casualty Co. (1993), 67 Ohio St.3d 500, the policy arguably affords no coverage to plaintiffs under the facts present here.
Those circumstances, however, are considerably different thanDemetry. In Demetry, "[t]he parties never intended underinsured coverage to be provided by the policy. As such, there could be no negotiated exclusions intended to be implied to the underinsured coverage." Id. at 698. Unlike Demetry, American's policy expressly provided underinsured coverage, and the parties entered into the contract with full knowledge of the exclusions in that contract. No underinsured coverage need be imposed by operation of law.
Plaintiffs next allege the trial court improperly found that the parties were precluded from recovering underinsured benefits based on an exclusion in the policy which stated:
 A. We do not provide Uninsured/Underinsured Motorists Coverage for bodily injury sustained by any person:
* * *
 2. If that person or the legal representative settles the bodily injury claim without our consent. This exclusion (A.2.) does not apply to a settlement made with the insurer of a vehicle described in Section 2. of the definition of uninsured/underinsured vehicle.
An uninsured/underinsured vehicle is defined in Section 2 as a land motor vehicle or trailer of any type:
 2. To which a bodily injury liability bond or policy applies at the time of accident. In this case its limit for bodily injury liability must be:
a. less than the limit of liability for this coverage; or
 b. reduced by payments to others injured in an accident to less than the limit of liability for this coverage.
The Section 2 definition does not apply here. Initially, according to the policy terms, the limits of the tortfeasor's liability coverage for bodily injury were $100,000 per person and $300,000 per accident, while American's policy limit was $100,000 per accident. Thus the tortfeasor's liability coverage was not less than plaintiffs' underinsured coverage. Secondly, no other payments were made to others injured in the accident. The tortfeasor's vehicle, therefore, does not fall within the Section 2 definition of uninsured/underinsured vehicles and, at first blush, American's consent to settlement was required, or coverage could be denied.
Despite the foregoing, the noted provisions of American's policy create somewhat of an anomaly. In essence, the provisions suggest no consent is necessary in those circumstances in which American is most likely to pay underinsured benefits: the tortfeasor has insufficient liability coverage to compensate American's insured for injuries sustained as a result of the tortfeasor's liability. On closer examination, however, the paragraph excluding the need for a consent only applies to a settlement made with the insurer of a vehicle; it is silent as to settlement with the tortfeasor. The provision thus confuses, if not misleads, an insured about when consent is unnecessary under the exclusion to the exclusion.
Moreover, the provisions of Section (A)(2) in American's policy contradict the language contained in paragraph (C)(3) of that policy, which states:
 A person seeking Uninsured/Underinsured Motorists Coverage must also:
* * *
 3. Promptly notify us in writing of a tentative settlement between the Insured and the insurer of a vehicle described in Section 2. of the definition of uninsured/underinsured motor vehicle
and allow us 30 days to advance payment to that Insured in an amount equal to the tentative settlement to preserve our rights against the insurer, owner or operator of such uninsured/underinsured motor vehicle.
While Section (A)(2) states that consent is not needed if the settlement involves a Section 2 vehicle, (C)(3) requires notification involving a Section 2 vehicle. Although we recognize that (A)(2) deals with consent and (C)(3) deals with notification, the provisions are nonetheless so contradictory with respect to consent and notification as to confuse the most savvy insured. Combining the conflict between (A)(2) and (C)(3) with the confusing language used in both sections regarding settlement with the tortfeasor's insurer, we conclude that the provisions of American's policy are confusing, ambiguous, and even misleading. Accordingly, we construe the policy against American and conclude that no consent is necessary under the circumstances presented in this case. See, e.g., Progressive Specialty Insurance Co. v.Easton (1990), 66 Ohio App.3d 177, 181. The trial court erred in holding that the parents were excluded from underinsured coverage pursuant to their policy with American. Plaintiffs' first assignment of error as it relates to the parents' claim for underinsured coverage is sustained.
 STATE AUTO MUTUAL INSURANCE
In their second assignment of error, plaintiffs contend the trial court also erred in granting summary judgment in favor of State Auto. Plaintiffs initially argue that because the State Auto insurance policy does not use the term "underinsured" in any portion of the policy, the policy fails to comply with the requirements of R.C. 3937.18. Despite plaintiffs' contentions to the contrary, the policy provides underinsured coverage, even though it is not so labeled, by stating that State Auto will pay compensatory damages when the amount paid by the tortfeasor's insurance company "is not enough to pay the full amount" the insured is entitled to recover.
The trial court, however, determined that because the parents settled their claims against the tortfeasor without State Auto's consent, underinsured coverage was excluded by the policy terms. State Auto's policy provides:
 A. We do not provide Uninsured Motorists Coverage for "bodily injury" sustained by any person:
* * *
 2. If that person or the legal representative settles the "bodily injury" claim without our consent. This exclusion (A.2.) does not apply to a settlement made with the insurer of a vehicle described in Section 2. of the definition of "uninsured motor vehicle."
An uninsured/underinsured vehicle is defined in Section 2 of State Auto's policy as a land motor vehicle or trailer of any type:
 2. To which a bodily injury liability bond or policy applies at the time of the accident but the amount paid for "bodily injury" under that bond or policy to an "insured" is not enough to pay the full amount the "insured" is legally entitled to recover as damages.
State Auto's Section 2 definition differs from the definition found in American's policy: it provides underinsured benefits if the amount paid under the tortfeasor's insurance policy is not enough to pay the full amount the parents are entitled to recover as damages. Thus, the tortfeasor's vehicle falls within the definition in Section 2 of State Auto's policy. At first glance, consent is not required.
As with the American policy, however, State Auto's policy states that the exclusion does not apply to a settlement made with an insurer of a vehicle described in Section 2. Here, plaintiffs settled with the tortfeasor, and in releasing the tortfeasor released also her insurer. The language is confusing and in effect reverses the otherwise apparent meaning of the section.
Further confusing matters, State Auto notes that the "insuring agreement" section of its policy places limitations on underinsured benefits. In that section, State Auto states that it will pay underinsured benefits only if Section 1 or 2 below applies:
 1. The limits of liability under any applicable bodily injury liability bonds or policies have been exhausted by payment of judgments or settlements; or
 2. A tentative settlement has been made between an "insured" and the insurer of a vehicle described in Section 2. of the definition of "uninsured motor vehicle" and we:
a. Have been given prompt written notice of such settlement; and
 b. Advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification.
State Auto argues that the parents are not entitled to coverage because they did not give notice as required by Section 2. Despite the disjunctive language, State Auto argues that only Section 2 deals with underinsured coverage; it asserts Section 1 should not apply because Section 2 is more applicable. By its terms, however, Section 1 applies: the parents' settlement with the tortfeasor exhausted that policy as to the parents. Because the parents settled with the tortfeasor and exhausted that policy, they satisfied the first clause of State Auto's insuring agreement and are entitled to receive underinsured benefits without notifying State Auto of the settlement. The result, however, contradicts the net effect of Section (A)(2) as interpreted with the language relating to settlement with the tortfeasor's insurer. Given the confusion and ambiguity, the policy must be construed in favor of plaintiffs to allow benefits without the prior consent of or notice to State Auto. See Gaeth v. Woodville Mut. Ins. Assn.
(Dec. 16, 1983), Ottawa App. No. 08-83-20, unreported; Tinkham v.Grange Mut. Companies (Dec. 30, 1986), Mahoning App. No. 86 C.A. 12, unreported. Plaintiffs' second assignment of error as it relates to the parents' claim for underinsured coverage is sustained.
 CHILDREN'S LOSS OF CONSORTIUM CLAIMS
In both assignments of error, plaintiffs contend the trial court erred in dismissing the loss of consortium claims of the minor children. The trial court barred the claims because "[a] minor's claim for loss of services is a derivative action dependent on the existence of his parent's primary action and can be maintained only so long as the primary action continues."Tabernero v. Toledo Speedway, Inc. (Nov. 16, 1990), Lucas App. No. L-90-038, unreported. Because it found the parents' claims failed, the trial court concluded the children's claims failed as well. As noted, however, the parents' claims did not fail for lack of notice or consent. Thus the trial court's rationale for denying the children's claims is incorrect.
Moreover, plaintiffs argue, and American concedes, that the Ohio Supreme Court has held that loss of consortium claims are separate and distinct causes of action. Bowen v. Kil-Kare, Inc.
(1992), 63 Ohio St.3d 84, 92-93; Schaefer v. Allstate Ins. Co.
(1996), 76 Ohio St.3d 553, 557. Because minor children have a separate and distinct claim for loss of parental consortium against third-party tortfeasors who negligently or intentionally injure a child's parent, Gallimore v. Children's Hospital MedicalCenter (1993), 67 Ohio St.3d 244, 254-255, Coleman v. SandozPharmaceuticals Corp. (1996), 74 Ohio St.3d 492, the trial court incorrectly dismissed the children's claims on those grounds.
Defendants contend, however, that the trial court nonetheless properly dismissed the children's claims because they never attempted to collect under the tortfeasor's insurance policy. They point out that the tortfeasor's insurance policy has a limit of $100,000 per person, but $300,000 per accident.
Schaefer held that "each person who is covered by an uninsured motorists policy and who is asserting a claim for loss of consortium has a separate claim subject to a separate per person policy limit. A provision in an insurance policy which reaches a contrary result is unenforceable." Schaefer, supra, at 558. While plaintiffs contend that Schaefer is limited to the context of underinsured benefits, this court has extended Schaefer
to cases involving a liability policy. Bernard v. Cordle (1996),116 Ohio App.3d 116, 123 (holding in the context of a liability policy that "each person who is covered by an insurance policy * * *
has a separate claim subject to a separate per person policy limit, assuming that the policy covers such an injury"). (Emphasissic.) See, also, Haywood v. State Farm Fire Casualty (Dec. 29, 1999), Knox App. No. 99-CA-15, unreported (applying Schaefer to a liability policy because Schaefer specifically overruled Tomlinsonv. Skolnik (1989), 44 Ohio St.3d 11, which itself was a liability policy case). Francis v. McClandish (Apr. 19, 1999), Athens App. No. 98CA21, unreported (concluding that, for the same reasons noted in Haywood, Schaefer would be applicable to a liability case). But, see, Jones v. Speelman (Aug. 31, 1998), Stark App. No. 1998CA00093, unreported (refusing to apply Schaefer because, among other reasons, that case dealt with uninsured coverage and could not be applied to a liability policy).
Consistent with Bernard, the children have separate claims for loss of consortium subject to a separate per person policy limit under the tortfeasor's liability policy. Nothing in the records demonstrates that the children ever exhausted the coverage under the tortfeasor's liability insurance policy. As such, an underinsured claim is premature, given that $200,000 remains under the tortfeasor's liability policy.
For the foregoing reasons, plaintiffs' two assignments of error as they relate to the children's loss of consortium claims are overruled.
Having sustained in part and overruled in part plaintiffs' first and second assignments of error, we affirm in part and reverse in part the judgment of the trial court and remand this matter to the trial court for further proceedings consistent with this opinion.
Judgment affirmed in part and reversed in part; caseremanded.
BOWMAN, P.J., and LAZARUS, J., concur.