DECISION AND JUDGMENT ENTRY
This is an appeal from a Pickaway County Common Pleas Court summary judgment in favor of Dorothy Harrel, plaintiff below and appellee herein, on her foreclosure claim against Jack and Linda Solt, defendants below and appellants herein. The following error is assigned for our review:
 "THE TRIAL COURT IMPROPERLY GRANTED SUMMARY JUDGMENT IN FAVOR OF APPELLEES SINCE GENUINE ISSUES OF MATERIAL FACT REMAIN TO BE LITIGATED. APPELLEES WERE NOT ENTITLED TO SUMMARY JUDGMENT AS A MATTER OF LAW; AND IT APPEARS FROM THE RECORD THAT REASONABLE MINDS CAN COME TO MORE THAN ONE CONCLUSION AND THAT THAT [sic] CONCLUSION IS ADVERSE TO APPELLEES."
A brief review of the facts pertinent to this appeal is as follows. Several years ago, appellants retained David Pritchard (an area realtor) to market their Hocking County, Ohio, real property for them. In the spring of 1997, Pritchard conducted an "open house." At this event appellants met Jim and Zelpha Barnhart, third party defendants below and appellees herein. The Barnharts had some initial interest in purchasing appellants' property, but later abandoned the idea after they determined that the land did not suit their needs.
During the conversations about the property, appellants learned that the Barnharts were trying to sell some land along State Route 159 in Saltcreek Township of Pickaway County. Appellants' daughter attended a nearby high school and they were interested in relocating to that area. This discourse prompted Appellant Jack Solt to view and investigate the property. Solt found two tracts of land for sale; a twenty (20) acre parcel owned by the Barnharts, and a contiguous twenty-nine (29) acre parcel owned by Ms. Barnhart's mother, appellee Dorothy Harrel.
The parties negotiated and finally, on June 19, 1997, executed sale contracts for both parcels. Appellants agreed to pay $45,000 cash for the Barnharts' twenty (20) acre tract. Appellants also agreed to acquire Ms. Harrell's twenty-nine (29) acre tract for $63,000, to be paid with $10,000 cash "down" at closing and a $53,000 purchase money mortgage to come due the following year.
The sales were closed the following month at which time appellants executed and delivered to Harrel their note and mortgage. Harrel filed the mortgage with the county recorder on July 17, 1997, and this apparently became the first and best lien in the premises. Appellants thereafter made no payment on their mortgage debt.
Harrel commenced the action below on September 18, 1998, and alleged that appellants had defaulted on their note and sought a judgment in the amount of $53,000 plus interest as well as foreclosure of her mortgage interest in the property. Appellants' answer admitted the existence of the note and mortgage, but denied any default or liability. Appellants also asserted a variety of defenses including, inter alia, fraud, misrepresentation and "lack of consideration." Additionally, appellants filed a counterclaim against Harrel for breach of contract, fraudulent misrepresentation and negligent misrepresentation. The gist of their counterclaims, as well as their aforementioned defenses, was that Harrel (through her son-in-law and agent, appellee Jim Barnhart) had enticed appellants into purchasing the property by misrepresenting to them that the land "was suitable for [residential] development" when, in fact, the Pickaway County Health Department had already denied an "on-site sewage disposal permit" for lots when the prior owner(s) had proposed sub-dividing the acreage. Appellants demanded $34,000 for compensatory damages and $25,000 for punitive damages. Harrel denied the allegations against her in the counterclaim and raised a number of defenses including waiver, estoppel and the application of the statute of frauds.
On November 20, 1998, appellants filed a third party complaint against the Barnharts and alleged multiple claims of fraudulent and negligent misrepresentation, as well as breach of contract.[1] The bases for these claims were essentially the same as set forth in their counterclaim against Harrel; namely, that the Barnharts misrepresented and/or concealed material facts relevant to the land's development potential when they negotiated the sale of the property. Appellants asked for $34,000 in compensatory damages and $25,000 in punitive damages as to the Harrel tract, and $25,000 in both compensatory and punitive damages with regard to the Barnhart tract.[2]
The Barnharts denied liability on the third party claims. They also raised numerous defenses including the failure to exercise due diligence to investigate the property prior to purchase, and the failure to provide for appropriate contingencies in the sales contracts.
The Barnharts filed a summary judgment motion on January 11, 2000 and argued that no genuine issues of material fact existed with respect to the third party claims. In particular, they relied on the real estate purchase contract regarding the sale of the twenty (20) acres and asserted that appellants did not include any sort of contingency in that document for "sewer/septic matters." They further asserted that the contract merged into the deed delivered and accepted at closing and this event limited appellants' recourse to an action for breach of warranty covenants in the instrument of conveyance. Thus, Barnharts argued, given that no warranties were included in the deed with respect to "sewer/septic matters," appellants had no actionable claim.
The Barnharts also asserted that the parole evidence rule barred appellants from altering or adding (by including a provision regarding sewer matters) to the terms of the sale contract(s). The Barnharts conceded that fraud was an exception to the application of this rule, but argued that such exception did not apply in the instant case. The Barnhart's understood that (1) the sale contract contained an "integration clause" and (2) that appellants' own realtor/agent drafted the agreement. The Barnharts further asserted that "[a]ny reasonably prudent developer" would have included contingencies in the sale contract(s) made operative upon septic approval by the health department, and that "[t]here [was] no way to prove justifiable reliance where a phone call at a minimum could have answered the entire septic issue with the health department."
Harrel filed her own summary judgment motion with respect to her complaint against appellants and on their counterclaim against her. First, Harrel pointed out that no dispute existed over the validity of the note and mortgage, or that appellants were in default. Thus, she claimed that she was entitled to judgment in her favor for the balance due on the note, and foreclosure of her security interest in the real property, unless a "valid defense to payment" could be shown. Harrel noted that appellants' first defense asserted a "lack of consideration" for the sale transaction. Harrel answered this, as did the Barnharts, by citing the real estate purchase contract and by pointing out that nothing in the document made the sale contingent on the approval of conventional sewage disposal. The terms of the contract had been followed, Harrel concluded, and appellants received the benefit of that for which they had bargained. She further argued that the parole evidence rule should prohibit any attempt to "vary or enlarge the terms of their contract."
Harrel also addressed the remaining defenses of estoppel, fraud and misrepresentation together with the counterclaims for fraudulent/negligent misrepresentation and breach of contract. First, Harrel's affidavit stated that she did not represent to appellants that the property was suitable for development purposes and that she did not even meet appellants until the "closing of this transaction." Harrel further attested that she did not authorize her son-in-law, Jim Barnhart, to serve as her agent in the sale of the property. Barnhart's affidavit stated that he did not represent to appellants that he acted as his mother-in-law's agent.
Both affiants further attested that they had no knowledge that appellants purchased the properties for development purposes. They both stated that the negotiated per acre price was for "farm" use and that they would not have sold the property for the sale price had they known that appellants intended to develop the land.[3] Harrel argued that the facts and circumstances showed that appellants bought the real estate to use as a residence/farm, and this was the intended use for the land. In any event, she continued, even if some sort of misrepresentation had been made, appellants did not justifiably rely on the misrepresentation because they had a duty to investigate the development potential of the land. Harrel also asserted that appellants could not prevail on their claims by virtue of the doctrine of caveat emptor and operation of the statute of frauds.
Appellants opposed both summary judgment motions and asserted, in essence, that they had been fraudulently induced by Appellee Jim Barnhart's representations into purchasing the two (2) properties. Appellant Jack Solt's affidavit set forth the following facts in evidence to support that claim:
 "4. * * * Jim Barnhart was emphatic that they wanted to sell all 49 acres together and generally expressed that he believed the property was well suited for my development purposes.
 5. After returning to the property the next day, I contacted Jim Barnhart by phone and explained that I was having difficulty locating the property lines, and it was at this time that he explained that they had a detailed plat of the building lots that they had planned for the development of the property, and he further stated that the Pickaway County Board of Health had already been to the property and had dug test sites and completed their evaluation. Jim Barnhart provided me . . . a plat of the planned residential development including the 49 acres which were the subject of our negotiations and particularly identified as the building lots previously evaluated by the Pickaway County Board of Health.
 6. After receiving the plat of the planned development from Jim Barnhart, I returned to the property site . . .
 7. During the negotiations at his house, Jim Barnhart fully understood that I was interested in purchasing the property for development purposes and specifically represented to me at that time that, `I have a developer from Columbus that is to come down today and make an offer on the 49 acres, and if you are interested, come back after 1:30 P.M. and I agree to sell you the 49 acres at the same price offered by the Columbus developer, for I would rather deal with a local person.'
 8. I went back to the Barnhart residence after 1:30 P.M. and Jim Barnhart stated that the Columbus developer had offered a price of $45,000.00 for the 20 acres and $63,000.00 on the 29 acres, and at this time, I explained that I was willing to match the price. * * *
* * *
 11. Jim Barnhart had represented that `they' had 49 acres for building lots in our initial meeting, provided me with a plat of the planned development and further stated that the Board of Health had completed evaluations on the proposed building lots, and during our negotiations disclosed his ongoing negotiations with a Columbus developer, and his desire to deal with me and, in fact, offered to sell the 49 acres at the same price offered by the Columbus developer, and at no time indicated any problems encountered in attempting to develop the subject real estate. I relied on these representations that the property was appropriate for my intended development purposes and saw no particular reason to include a contingency for development purposes . . .
* * *
 14. * * * At no time did Jim or Zelpha Barnhart indicate any problem with their previous development plans and concealed the fact the Pickaway County Board of Health had rejected previous applications of Dorothy Harrel and Zelpha Barnhart to gain approval of conventional on-site sewage systems for building lots on the subject real estate. ." (Emphasis added).
Appellants argued that these representations established a genuine issue of material fact as to whether they were fraudulently induced to buy the properties. With respect to the assertion that their defenses/claims were barred by application of the parole evidence rule, the statute of frauds and the doctrine of caveat emptor, appellants contended that those principles did not apply in the presence of fraud. They also argued that, although they may have had a duty to investigate the property, this latent condition (i.e. the inability to place a conventional on-site sewage system) was not open to observation.
On the issue of whether Appellee Jim Barnhart operated as an agent for his mother-in-law, Solt's affidavit stated that Barnhart "conducted himself as the agent of Dorothy Harrel" throughout their relationship and that Harrel had affirmed that agency capacity by "allowing him [Barnhart] to conduct all discussions and negotiations regarding the sale of her property." Given that Harrel (by her own admission) never met with appellants until the closing, and had relied on her son-in-law to negotiate the sale of her land, appellants concluded that a genuine issue of material fact existed as to whether Barnhart operated as Harrel's agent.
The trial court granted summary judgment in favor of the Barnharts and Harrel. The court first determined that no genuine issues of material fact existed with regard to the note being in default and that, all other things aside, Barnhart was entitled to judgment and foreclosure of her security interest as a matter of law.
The trial court then turned to appellants' defenses, counterclaims and third party claims. First, the court noted that the "alleged concealment[s]" by Harrel and the Barnharts could not support the negligent misrepresentation claim. The court held that some "affirmative false statement" must be proven in order to establish negligent misrepresentation. As to the fraudulent misrepresentation claim, the court held that appellants submitted no evidence to substantiate any elements of fraud. The court also rejected the breach of contract claim ruling that appellants could show no provision in either the purchase contracts or the general warranty deeds that had been breached and that the statute of frauds prohibited them from relying on alleged oral discussions as to matters not expressly set forth in those instruments. Thus, the court concluded, Harrel and the Barnharts were entitled to judgment in their favor as a matter of law.
The trial court instructed their respective counsels to prepare an appropriate entry and, on March 14, 2000, the court entered judgment for Harrel in the amount of $53,000 together with statutory interest from the day of default. Her mortgage was also ordered foreclosed and the Pickaway County Sheriff was directed to sell the property and to apply the proceeds to that debt and to the interests of other lienholders according to their priority. This appeal followed.
Appellants argue in their assignment of error that the trial court erred in entering summary judgment against them. We begin our analysis of this argument from the standpoint that an appeal from a summary judgment is reviewed by us de novo. See Broadnax v. Greene Credit Service (1997),118 Ohio App.3d 881, 887, 694 N.E.2d 167, 171; Coventry Twp. v. Ecker
(1995), 101 Ohio App.3d 38, 41, 654 N.E.2d 1327, 1329; Maust v. Bank OneColumbus, N.A. (1992), 83 Ohio App.3d 103, 107, 614 N.E.2d 765, 768. That is to say, we afford no deference to the trial court's decision, seeHicks v. Leffler (1997), 119 Ohio App.3d 424, 427, 695 N.E.2d 777, 779;Dillon v. Med. Ctr. Hosp.(1993), 98 Ohio App.3d 510, 514-515,648 N.E.2d 1375, 1378; Morehead v. Conley (1991), 75 Ohio App.3d 409,411-412, 599 N.E.2d 786, 788, and conduct our own independent review to determine if summary judgment is appropriate. Woods v. Dutta (1997),119 Ohio App.3d 228, 233-234, 695 N.E.2d 18, 21; Phillips v. Rayburn
(1996), 113 Ohio App.3d 374, 377, 680 N.E.2d 1279, 1281; McGee v.Goodyear Atomic Corp. (1995), 103 Ohio App.3d 236, 241, 659 N.E.2d 317,320.
Summary judgment under Civ.R. 56(C) is appropriate when the movants are able to demonstrate that (1) there are no genuine issues of material fact, (2) they are entitled to judgment in their favor as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the opposing party. The nonmoving party is entitled to have the evidence construed most strongly in their favor.Zivich v. Mentor Soccer Club, Inc. (1998), 82 Ohio St.3d 367, 369-370,696 N.E.2d 201, 204; Mootispaw v. Eckstein (1996), 76 Ohio St.3d 383,385, 667 N.E.2d 1197, 1199; Harless v. Willis Day Warehousing Co.
(1978), 54 Ohio St.2d 64, 66, 375 N.E.2d 46, 47-48. Furthermore, the parties moving for summary judgment bear the initial burden of demonstrating that no genuine issue of material fact exist and that they are entitled to judgment as a matter of law. See Vahila v. Hall (1997),77 Ohio St.3d 421, 429, 674 N.E.2d 1164, 1170; Dresher v. Burt (1996),75 Ohio St.3d 280, 293, 662 N.E.2d 264, 274; Mitseff v. Wheeler (1988),38 Ohio St.3d 112, 115, 526 N.E.2d 798, 801. Once that burden is met, the onus then shifts to the non-moving parties to provide evidentiary materials in rebuttal. See Trout v. Parker (1991), 72 Ohio App.3d 720,723, 595 N.E.2d 1015, 1017; Campco Distributors, Inc. v. Fries (1987),42 Ohio App.3d 200, 201, 537 N.E.2d 661, 662-663; Whiteleather v.Yosowitz (1983), 10 Ohio App.3d 272, 275, 461 N.E.2d 1331, 1335-1336. With this in mind, we turn our attention to the proceedings below.
Undoubtably, Harrel carried her initial burden to provide evidentiary materials in support of her foreclosure claim. She attested in her affidavit that appellants did not make any payment on their debt and she attached appellants' written admissions in which they essentially conceded to default on the note and mortgage. Appellants did not contest that issue. Rather, they raised numerous defenses and advanced a wide variety of counterclaims and third party claims.
We need not, however, specifically address whether Harrel and the Barnharts carried their initial burden under Civ.R. 56(C) with respect to those claims and defenses. Even assuming arguendo that they did, and this certainly appears to be the case from our review of their respective motions, we conclude that appellants have supplied sufficient evidentiary materials in rebuttal to demonstrate the existence of genuine issues of material fact to be resolved at trial.
First, with respect to negligent misrepresentation claim, we note that the elements of this tort are described as follows:
 "One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information." (Emphasis in original).
See Delman v. Cleveland Heights (1989), 41 Ohio St.3d 1, 4, 534 N.E.2d 835,838; also see Erie Ins. Co. v. Favor (1998), 129 Ohio App.3d 644,649-650, 718 N.E.2d 968, 972; Leal v. Holtvogt (1998), 123 Ohio App.3d 51,62, 702 N.E.2d 1246, 1253.
The trial court correctly noted that a claim for negligent misrepresentation will not lie for omissions; rather, some affirmative false statement must be attributed to the tortfeasor. See Textron Fin.Corp. v. Nationwide Mut. Ins. Co. (1996), 115 Ohio App.3d 137, 149,684 N.E.2d 1261, 1269; Martin v. Ohio State Univ. Found. (Oct. 17, 2000), Franklin App. No. 99AP-1248, unreported; Russell v. Northwood
(Feb. 27, 1998), Wood App. No. WD-97-050, unreported. Our disagreement with the trial court, however, is the conclusion that no evidence of false statements exist in this case. Appellant Jack Solt's lengthy and detailed affidavit recited a number of affirmative statements and actions allegedly taken by appellees, including (1) representing to him that the properties were "well suited" for his development purposes; (2) providing he and his wife with a proposed "plat" for planned development;"[4] (3) informing them that the property had been evaluated by the board of health (without revealing to them that the property had been rejected for conventional on-site sewage); and (4) representing that a "Columbus developer" was also interested in the properties and wanted to buy them (presumably, for development purposes). In our view, these representations and actions sufficiently demonstrate affirmative false statements necessary to establish a negligent misrepresentation claim.
The trial court did not address the remaining elements of negligent misrepresentation, but we believe sufficient evidence supported those elements as well. Solt's affidavit stated that Barnhart told him "that the Pickaway County Board of Health had already been to the property and had dug test sites and completed their evaluation." Barnhart then allegedly gave Solt a plat of the proposed and planned residential development noting that the property had been "previously evaluated by the Pickaway County Board of Health." These comments and actions, if true, could have misled appellants into believing that the land had been approved for "conventional on-site sewage." We readily acknowledge, however, that a reasonably prudent buyer may have questioned those representations and conducted their own investigation into the matter. Nevertheless, we cannot say as a matter of law that appellants were not justified in relying on those representations. We believe that given the particular facts and circumstances of the cause sub judice, this question is one best left to the trier of fact to determine.[5] Additionally, evidence was adduced below to demonstrate damages. Notwithstanding the fact that appellants could not develop the land as they intended, their realtor (Pritchard) attested in an affidavit that he believed the value of the undeveloped land was $800 per acre or approximately $39,200 for both tracts, as opposed to the $108,000 sale price when it was believed that the property could be developed. For these reasons, we hold that there are genuine issues of material fact regarding appellants' claim for negligent misrepresentation and that this matter should be decided by the trier of fact.
We must also respectfully disagree with the trial court that no evidence supported appellants' fraud claim or, for that matter, their fraudulent inducement claim. The elements of fraudulent misrepresentation are (1) a representation or, when there is a duty to disclose, concealment of a fact, (2) which is material to the transaction at hand, (3) made falsely, with knowledge of its falsity, or with such utter disregard as to whether it is true or false that such knowledge may be inferred, (4) with the intent of misleading another into relying upon it, (5) with justifiable reliance on the misrepresentation or concealment, and (6) an injury proximately caused by that reliance. SeeGaines v. Preterm-Cleveland, Inc. (1987), 33 Ohio St.3d 54, 55,514 N.E.2d 709; Burr v. Stark Cty. Bd. Of Commrs. (1986), 23 Ohio St.3d 69,491 N.E.2d 1101, at paragraph two of the syllabus. The elements of fraudulent inducement are essentially the same. See generally CountrymarkCooperative, Inc. v. Smith (1997), 124 Ohio App.3d 159, 171-172,705 N.E.2d 738, 746; Metropolitan Life Ins. Co. v. Triskett Illinois,Inc. (1994), 97 Ohio App.3d 228, 235, 646 N.E.2d 528, 532; Lepera v.Fuson (1992), 83 Ohio App.3d 17, 22-23, 613 N.E.2d 1060, 1063.
Here again, appellants' evidentiary materials show that Barnhart had represented to them that the land was suitable for their intended development purposes. Evidence also showed that Barnhart had told appellants that the property had been tested by the board of health for on-site sewage disposal and that he gave them a plat for development that he had planned for the property. Assuming all this to be true, as we must for purposes of summary judgment, appellants were arguably misled into believing that they could develop this property. We note that Barnhart admitted in his affidavit that he knew the properties had not been approved for "on-site sewage disposal systems" prior to sale and, thus, he had knowledge of the "falsity" of his alleged misrepresentations. Appellee Jack Solt's affidavit states that he purchased the property for "development purposes" thereby indicating that the sewer conditions were indeed material to the transaction.[6]
Intent to deceive could reasonably be gleaned from the fact that Barnhart knew the property was not approved for on-site sewage disposal, but allegedly misled appellants into believing otherwise in order to sell the land at an inflated price.[7] The issue of whether appellants justifiably relied on Barnhart's misrepresentations is a question best left to the trier of fact.[8] We recognize that Ohio law requires a person to exercise proper vigilance in dealing with others and, at times, to reasonably investigate before relying on statements or representations. See Foust v. Valleybrook Realty Co. (1981),4 Ohio App.3d 164, 165, 446 N.E.2d 1122, 1125; Feliciano v. Moore
(1979), 64 Ohio App.2d 236, 241-242; 412 N.E.2d 427, 430-431. In the instant case, however, it is not entirely clear that appellants could have been expected to discover the problem at issue here upon reasonable investigation. This matter was, after all, not an openly observable defect. Finally, as we stated earlier when discussing the negligent misrepresentation claim, appellants have adduced evidence of injury and damages. Thus, sufficient evidence exists to survive a summary judgment motion and present the fraud and fraudulent inducement claims to the trier of fact.
We note that Harrel and the Barnharts both advanced a number of different arguments and legal theories, both on appeal and in the trial court, to support the summary judgment and to defeat appellants' claims and defenses. Those theories and arguments included the doctrines of caveat emptor and merger by deed, as well as the application of the parole evidence rule and the statute of frauds. Generally speaking, however, we find these arguments unavailing. The doctrine of caveat emptor cannot be used to protect a vendor of real property if the buyer can prove fraud, see Layman v. Binns (1988), 35 Ohio St.3d 176, 177,519 N.E.2d 642, 644; also see Rogers v. Hill (1998), 124 Ohio App.3d 468,471, 706 N.E.2d 438, 440; Rose v. Zaring Homes, Inc. (1997),122 Ohio App.3d 739, 744, 702 N.E.2d 952, 955, and neither can the doctrine of merger by deed. See Lamberjack v. Priesman (Feb. 5, 1993), Ottawa App. No. 92-OT-006, unreported; Klapchar v. Dunbarton Properties,Ltd. (Nov. 4, 1991), Stark App. No. CA-8521, unreported. Further, the parol evidence rule does not prohibit a party from introducing extrinsic evidence for the purpose of proving fraudulent inducement, see Galmishv. Cicchini (2000), 90 Ohio St.3d 22, 28, 734 N.E.2d 782, 789, also seeDrew v. Christopher Constr. Co., Inc. (1942), 140 Ohio St. 1,41 N.E.2d 1018, at paragraph two of the syllabus,[9] and the statute of frauds may not be interposed in furtherance of fraud. See MarionProduction Credit Assn. V. Cochran (1988), 40 Ohio St.3d 265,533 N.E.2d 325, at paragraph two of the syllabus; also see McCarthy,Lebit, Crystal Haiman Co., L.P.A. v. First Union Mgt., Inc. (1993),87 Ohio App.3d 613, 623, 622 N.E.2d 1093, 1100. As stated above, after construing the evidence most strongly in appellants' favor, as we must for purposes of reviewing a summary judgment motion, we believe that appellants have raised genuine issues of material fact regarding the claims of fraud and fraudulent inducement. Thus, these theories may not shield Harrel and the Barnharts from potential liability on those claims.
We recognize that the appellees take great issue with what they characterize as Solt's "bare allegations," and argue that summary judgment is the appropriate resolution of this matter. We further recognize that in certain summary judgment cases, the evidence submitted by the nonmoving party, although ostensibly sufficient to create a genuine issue of material fact, may not, in fact, rise to the degree necessary to create a genuine issue of material fact. In Anderson v.Liberty Lobby, Inc. (1986), 477 U.S. 242 at 251-252 the court wrote:
 "[A] `genuine issue' exists when the evidence presents `a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law.' . . . In order for the evidence to be in `sufficient disagreement,' the court must `ask [itself] * * * whether a fair minded jury could return a verdict for the plaintiff on the evidence presented. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence upon which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict — whether there is evidence upon which a jury can properly proceed to find a verdict for the party producing, it upon whom the onus of proof is imposed."
See, also, McCullough v. Spitzer Motor Ctr., Inc. (Jan. 27, 1994), Cuyahoga App. No. 64465, unreported. Material facts are those facts that might affect the outcome of the suit under the governing law of the case. Turner v. Turner (1993), 67 Ohio St.3d 337, 617 N.E.2d 1123, citing Anderson, supra. To determine what constitutes a genuine issue of material fact, courts must decide whether the evidence presents a sufficient disagreement to require submission to the jury, or whether the evidence is so one-sided that one party must prevail as a matter of law.Turner. In the case sub judice, we conclude that appellant's claims, if believed, present a sufficient disagreement of the evidence to require submission of the issues to a jury.
Further, appellees must keep in mind that the credibility of an affiant is not generally considered when a court determines whether genuine issues of material fact exist. In Killilea v. Sears, Roebuck Co.
(1985), 27 Ohio App.3d 163, 167, 499 N.E.2d 1291, 1295, the court wrote:
 "Resolution of a motion for summary judgment does not include trying the credibility of witnesses. If an issue is raised on summary judgment, which manifestly turns on the credibility of the witnesses because his testimony must be believed in order to resolve the issue, and the surrounding circumstances place the credibility of the witness in question — for example, where the potential for bias and interest is evidence — then, the matter should be resolved at trial, where the trier of facts has an opportunity to observe the demeanor of the witness."
Thus, the credibility of witnesses should generally be resolved at trial, not during a summary judgment determination.
We also recognize that in the case sub judice the trial court, when it resolved the summary judgment question, did not undertake to weigh the witnesses' credibility, but rather determined that appellants' claims, if believed, did not rise to the level necessary to establish actionable claims. We believe, however, that the facts adduced below, including Barnhart's alleged statements, present an arguable issue on the misrepresentation and fraud claims. Thus, the evidence herein is sufficient to survive a summary judgment motion and to have the issue presented to a trier of fact.
For these reasons, the assignment of error is well taken and is hereby sustained. The judgment of the trial court is reversed and this case is remanded for further proceedings consistent with this opinion.
JUDGMENT ENTRY
It is ordered that the judgment be reversed and that the case be remanded for further proceedings. Appellants shall recover of appellees costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Pickaway County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Kline, P.J. Evans, J.: Concur in Judgment Opinion
 ___________________________ Peter B. Abele, Judge
[1] Appellants also named their former realtor, Mr. Pritchard, as a defendant and alleged that he "failed to exercise due care" and "negligently supplied false information [to them] as to the ability to develop the real estate." They asked for $59,000 in compensatory damages. Pritchard was later dismissed from the action pursuant to Civ.R. 41(A)(1).
[2] The compensatory damage figures were apparently based on what appellants calculated to be the difference between the price they paid for these properties (assuming they could be developed) and the actual fair market value of the land as it stood without development.
[3] Mr. Barnhart conceded in his affidavit that he and his wife had previously asked the Pickaway County Health Department to evaluate the property and, because of the proximity of bedrock to the surface, something other than a traditional "on-site sewage disposal system" would be required. The affiant nevertheless stated that this fact was not hidden from appellants. Rather, this fact was simply not brought up because the Barnharts believed that appellants purchased the land for farm and pasture usage.
[4] A copy of the proposed plat allegedly given to Solt by Barnhart was included in their memorandum contra summary judgment below.
[5] We also parenthetically note that nothing in the record indicates that the Pickaway County Board of Health would have divulged the test results to appellants prior to them owning the property. The parties' counsel conceded at oral argument, however, that this information could have been ascertained by any person making a request.
[6] A fact is material to the transaction if it is likely, under the circumstances, to affect the conduct of a reasonable person with reference to the transaction at hand. Van Camp v. Bradford (1993),63 Ohio Misc.2d 245, 255, 623 N.E.2d 731, 737-738. The clear tenor of Solt's affidavit is that on-site sewage disposal was necessary to develop the property and that he and his wife would not have purchased the property if it could not be developed.
[7] Intent is rarely proven by direct evidence and must usually be inferred from the totality of the circumstances. Doyle v. FairfieldMachine Co., Inc. (1997), 120 Ohio App.3d 192, 208, 697 N.E.2d 667,677; Davis v. Sun Refining Marketing Co. (1996), 109 Ohio App.3d 42,56, 671 N.E.2d 1049, 1059.
[8] The question of justifiable reliance in a fraud case is typically one of fact. See Leal v. Holtvogt (1998), 123 Ohio App.3d 51, 77,702 N.E.2d 1246, 1263; Crown Prop. Dev., Inc. v. Omega Oil Co. (1996),113 Ohio App.3d 647, 657, 681 N.E.2d 1343, 1349.
[9] The inclusion of an integration clause into a real estate purchase contract does not vitiate the principle that parol evidence is admissible to prove fraud. See Galmish v. Cicchini (2000), 90 Ohio St.3d 22, 28,734 N.E.2d 782, 790; also see 37 American Jurisprudence 2d (1968) 622-623, Fraud Deceit, § 452.