OPINION
{¶ 1} Appellants, Nicholas Simon, by his father and next friend James Simon, and Kristy Simon ("the Simons"), appeal the judgment entered by the Lake County Court of Common Pleas. The trial court granted a motion for summary judgment filed by appellee, Westfield Insurance Company ("Westfield"). *Page 2 
 {¶ 2} In a separate action, the Simons filed a complaint against Dale, Richard, and Jacklyn Porchervina in the Lake County Court of Common Pleas. The complaint alleged the following facts:
 {¶ 3} In 1997, Dale Porchervina had kissed Diane Hirz's daughter, then age two, with an open mouth. In 2000, Dale Porchervina caused bruising to Diane Hirz's son by biting his penis. After this event, Diane Hirz informed Jacklyn Porchervina about it and told her that Dale was no longer welcome at her house. In 2005, Kristy Simon noticed that Dale Porchervina was permitted to baby-sit his younger sister during the day. Kristy Simon contacted Jacklyn Porchervina and asked her if Dale could also baby-sit Nicholas Simon. Jacklyn Porchervina represented that Dale could baby-sit Nicholas Simon. In August 2005, while baby-sitting Nicholas, Dale Porchervina performed an unwanted act of fellatio on Nicholas and threw Nicholas into a wall.
 {¶ 4} The Simons' complaint alleged sexual assault against Dale Porchervina, intentional infliction of emotional distress against Dale Porchervina, parental responsibility pursuant to R.C. 3109.10 against Richard and Jacklyn Porchervina, and two counts of negligent infliction of emotional distress.
 {¶ 5} The Porchervinas had a homeowner's insurance policy through Westfield. After the Simons filed their complaint, the Porchervinas sought coverage from Westfield. Westfield initiated the instant action by filing a complaint for declaratory judgment. Westfield sought a judgment that it had no duty to defend nor indemnify the Porchervinas in the underlying lawsuit. The Simons filed a motion to intervene, which was granted by the trial court. In addition, the Simons filed a brief in opposition to Westfield's complaint for declaratory judgment. *Page 3 
 {¶ 6} Westfield filed a motion for summary judgment. Westfield attached a copy of the insurance policy issued to the Porchervinas to its motion. The Simons filed a brief in opposition to Westfield's motion for summary judgment. The Simons attached a copy of their amended complaint against the Porchervinas in the underlying action to their brief. Westfield filed a reply to the Simons' brief in opposition to its motion for summary judgment. The trial court granted Westfield's motion for summary judgment.
 {¶ 7} The Simons raise the following assignment of error:
 {¶ 8} "The trial court erred to the detriment of Appellants James Simon, Kristy Simon, and Nicholas Simon by granting summary judgment of Appellee Westfield Insurance Company's Motion for Summary Judgment in opposition to the holdings of [Doe v. Shaffer (2000), 90 Ohio St.3d 388
and Havel v. Chapek, 11th Dist. No. 2004-G-2609, 2006-Ohio-7014.]"
 {¶ 9} Pursuant to Civ. R. 56(C), summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Dresher v. Burt (1996),75 Ohio St.3d 280, 293. In addition, it must appear from the evidence and stipulations that reasonable minds can come to only one conclusion, which is adverse to the nonmoving party. Civ. R. 56(C). The standard of review for the granting of a motion for summary judgment is de novo.Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105.
 {¶ 10} "Since summary judgment denies the party his or her `day in court' it is not to be viewed lightly as docket control or as a `little trial.' The jurisprudence of summary judgment standards has placed burdens on both the moving and the nonmoving party. In Dresher v.Burt, the Supreme Court of Ohio held that the moving party seeking *Page 4 
summary judgment bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record before the trial court that demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim. The evidence must be in the record or the motion cannot succeed. The moving party cannot discharge its initial burden under Civ. R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case but must be able to specifically point to some evidence of the type listed in Civ. R. 56(C) that affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. If the moving party has satisfied its initial burden, the nonmoving party has a reciprocal burden outlined in the last sentence of Civ. R. 56(E) to set forth specific facts showing there is a genuine issue for trial. If the nonmoving party fails to do so, summary judgment, if appropriate shall be entered against the nonmoving party based on the principles that have been firmly established in Ohio for quite some time in Misteff v.Wheeler (1988), 38 Ohio St.3d 112.
 {¶ 11} "* * *
 {¶ 12} "The Supreme Court in Dresher went on to hold that whenneither the moving nor nonmoving party provides evidentiary materials demonstrating that there are no material facts in dispute, the moving party is not entitled to a judgment as a matter of law as the moving party bears the initial responsibility of informing the trial court of the basis for the motion, `and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's *Page 5 
claim.' [Dresher v. Burt, 75 Ohio St.3d at 276.]" Welch v.Ziccarelli, 11th Dist. No. 2006-L-229, 2007-Ohio-4374, at ¶ 40-42. (Emphasis sic.)
 {¶ 13} The Simons contend that Westfield has a duty to indemnify the Porchervinas due to the Supreme Court of Ohio's holding in Doe v.Shaffer. In Doe v. Shaffer, the Supreme Court of Ohio held, "Ohio public policy permits a party to obtain liability insurance coverage for negligence related to sexual molestation when that party has not committed the act of sexual molestation." Doe v. Shaffer,90 Ohio St.3d 388, syllabus. (Citations omitted.) It is important to note that the Supreme Court of Ohio only held that it did not violate public policy to provide insurance coverage for negligence relating to sexual molestation. It did not hold that every insurance policy necessarily provided such coverage. "An insurance policy is a contract."Westfield Ins. Co. v. Galatis, 100 Ohio St.3d 216, 2003-Ohio-5849, at ¶ 9. Therefore, in any given policy, the parties are free to contract for this coverage. As stated by the Second Appellate District:
 {¶ 14} "Shaffer addressed public policy, not policy language. The fact that public policy allows the purchase of insurance for negligence related to sexual molestation says nothing about whether the Utica policy exclusion applies in this case. * * * In short, Shaffer holds that a nonmolester may be insured for acts of negligence related to molestation, but it does not hold that a nonmolestor must be so insured or is so insured under a given policy." Lehrner v. Safeco Ins./Am.States Ins. Co., 171 Ohio App.3d 570, 2007-Ohio-795, at ¶ 46, citingAllstate Ins. Co. v. Doleman, 6th Dist. Nos. L-05-1281 L-05-1290,2006-Ohio-4134, at ¶ 24. (Emphasis sic.) *Page 6 
 {¶ 15} Next, we address whether the alleged negligence of Richard and Jacklyn Porchervina constitutes an "occurrence" under the Westfield policy. An "occurrence" is defined in the policy as follows:
 {¶ 16} "5. Occurrence means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:
 {¶ 17} "a. Bodily injury; or
 {¶ 18} "b. Property damage."
 {¶ 19} "Where the insurer's duty to defend is not apparent from the pleadings in the action against the insured, but the allegations do state a claim which is potentially or arguably within the policy coverage, or there is some doubt as to whether a theory of recovery within the policy coverage has been pleaded, the insurer must accept the defense of the claim." Willoughby Hills v. Cincinnati Ins. Co. (1984),9 Ohio St.3d 177, syllabus.
 {¶ 20} The Simons challenge the trial court's entry of summary judgment in relation to its fourth and fifth claims, both of which are titled negligent infliction of emotional distress. Westfield argues that the Simons did not assert a claim of negligence for bodily injury.
 {¶ 21} Pursuant to the language of the policy, "bodily injury means bodily harm, sickness or disease, including required care, loss of services and death that result." Generally, emotional distress does not qualify within the definition of bodily injury for the purposes of an insurance contract. See Johnson v. Am. Family Ins., 160 Ohio App.3d 392,2005-Ohio-1776, at ¶ 25 (citations omitted); Hawthorne v. Estate ofMigoni, *Page 7 
5th Dist. No. 2003 AP 07 0054, 2004-Ohio-378, at ¶ 15-20; and Berry v.Przyborowski (Nov. 19, 1999), 2d Dist. No. 99-CA-21, 1999 Ohio App. LEXIS 5484, at *13 (citation omitted). Further, courts have held that language defining "bodily injury," similar to that in the Westfield policy, does not cover emotional injuries. Berry v. Przyborowski, supra, at *12-13; Lenk v. Nationwide Mut. Ins. Co. (Feb. 19, 2002), 10th Dist. No. 01AP-824, 2002 Ohio App. Lexis 601, at *7-12.
 {¶ 22} The Simons direct our attention to the case of GNFH, Inc. v. W.Am. Ins. Co., 172 Ohio App.3d 127, 2007-Ohio-2722, in support of their argument that emotional distress can be included within the definition of bodily injury. However, it is important to note the exact policy language at issue in that case defined "bodily injury" as "`incidental medical malpractice injury, sickness or disease sustained by a person, and includes mental anguish resulting from any of these.'" Id. at ¶ 109. (Emphasis added.) Thus, the policy language in GNFH, Inc. v. W. Am. Ins.Co. was different from the policy language in the case sub judice, in that the language in that case specifically provided coverage for mental anguish. Id.
 {¶ 23} In their fourth and fifth claims, the Simons restated their prior allegations of the amended complaint, including the alleged injuries to Nicholas Simon. These injuries were alleged as "severe and ongoing mental anguish, embarrassment, humiliation, and fright. These injuries have caused extreme pain and suffering in the past and will likely cause similar pain and suffering in the future." More specifically, the amended complaint described Nicholas Simon's injuries as recurring nightmares, regular bed-wetting, loss of bladder control, and "anxiety/ panic attacks." The Simons asserted specific medical conditions, most notably "anxiety/ panic attacks," that could arguably *Page 8 
constitute "sickness" pursuant to the policy. However, coverage for bodily injuries does not include "`physical symptoms stemming from the emotional distress.'" Dunn v. N. Star Resources, 8th Dist. No. 79455, 2002-Ohio-4570, at ¶ 37, quoting Dickens v. Gen. Acc. Ins. (1997),119 Ohio App.3d 551, 554.
 {¶ 24} Even when construing the allegations in the amended complaint most favorably to the Simons, the allegations do not state a claim which is potentially or arguably within the coverage of the Westfield policy, since all of the Simons' alleged injuries stem from emotional injuries, which do not fall within the policy definition of "bodily injuries." Therefore, the alleged conduct does not constitute an occurrence under the policy.
 {¶ 25} Westfield argues the incident in this matter was not an accident but, rather, was the intentional act of Dale Porchervina. We note that the Supreme Court of Ohio has determined that a conflict exits on the following question:
 {¶ 26} "`When an insurance policy defines an "occurrence" as an "accident" that results in bodily injury, does an "occurrence" include injuries that result from an intentional act when the insured seeking coverage are claimed to have been negligent in relation to that intention[al] act.'" Safeco Ins. Co. of Am. v. Fed. Ins. Co.,117 Ohio St.3d 1456, 2008-Ohio-1635.
 {¶ 27} Since the Supreme Court has determined that a conflict exists on this issue, we will not address it at this time. Moreover, whether Richard and/or Jacklyn Porchervina's alleged negligence constitutes an accident is not determinative of this matter, as a result of our conclusion that there was no occurrence due to the absence of an allegation of bodily injury. *Page 9 
 {¶ 28} We have concluded that the alleged acts of Richard and Jacklyn Porchervina do not constitute an occurrence under the policy. Alternatively, even if their actions are considered an occurrence, coverage does not exist due to the express exclusionary language contained in the policy. The policy in this matter contained an "exclusions" section, wherein the policy specifically excluded certain actions from insurance coverage. This section provides, in part:
 {¶ 29} "1. Coverage E — Personal Liability and Coverage F — Medical Payments to Others do not apply to bodily injury or property damage:
 {¶ 30} "* * *
 {¶ 31} "k. Arising out of sexual molestation, corporal punishment or physical or mental abuse[.]"
 {¶ 32} We note that the language of this exclusion does not differentiate as to who committed the act of sexual molestation. It simply states that coverage will not apply to any bodily injuries that arise out of sexual molestation. In this matter, all of the Simons' alleged injuries, including those attributed to the negligence of Richard and Jacklyn Porchervina, arose out of Dale Porchervina's alleged sexual molestation of Nicholas Simon. Therefore, pursuant to the unambiguous language of the exclusion, Westfield has no duty to defend nor indemnify the Porchervinas.
 {¶ 33} Since there were no genuine issues of material fact and Westfield was entitled to judgment as a matter of law, the trial court did not err by granting its motion for summary judgment.
 {¶ 34} The Simons' assignment of error is without merit.
 {¶ 35} The judgment of the trial court is affirmed. *Page 10 
CYNTHIA WESTCOTT RICE, J., concurs,
COLLEEN MARY OTOOLE, J., concurs with Concurring Opinion.