[Cite as *Dieringer v. Sawmiller*, 2012-Ohio-4880.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## AUGLAIZE COUNTY

SANDRA DIERINGER, ET AL.,

    PLAINTIFFS-APPELLANTS,          CASE NO. 2-12-04

    v.

BRADLEY O. SAWMILLER, ET AL.,       O P I N I O N

    DEFENDANTS-APPELLEES.

Appeal from Auglaize County Common Pleas Court
Trial Court No. 2011-CV-0080

**Judgment Affirmed**

Date of Decision: October 22, 2012

APPEARANCES:

    *J. Alan Smith and Austin M. Klaus* for Appellants

    *Brian J. Bradigan* for Appellees, Bradley Sawmiller and Dana Gilbert

    *Christopher W. Carrigg and Jennifer M. Brill* for Appellee,
        Motorists Mutual Insurance Company

    *Michael W. Sandner and Joshua M. Kin* for Appellee, Grange
    Insurance Company

**ROGERS, J.**

{¶1} Plaintiffs-Appellants, Sandra Dieringer and Michael Dieringer (collectively, the "Dieringers"), appeal the judgment of the Court of Common Pleas of Auglaize County granting summary judgment in favor of Defendant-Appellee, Motorists Mutual Insurance Company ("Motorists Mutual"), on the Dieringers' request for a declaratory judgment. On appeal, the Dieringers contend that the trial court erroneously granted summary judgment because there is a genuine issue of material fact as to whether Sandra suffered a "bodily injury" that is covered under the terms of their insurance policy with Motorists Mutual. For the reasons that follow, we affirm the trial court's judgment.

{¶2} This matter arose from an automobile accident on September 8, 2010. Bradley Sawmiller, a minor, was driving his automobile in a westbound direction on Parkway Drive in St Mary's Township when he struck Nancy Hertenstein, who was walking westbound on the side of the street. Hertenstein was severely injured and she died as a result. At the time of the accident, Hertenstein was walking with Sandra, her sister. Although Sawmiller's automobile did not strike Sandra, she witnessed the accident and its resulting effect on her sister. Sandra has suffered significant emotional distress from the accident.

{¶3} When the accident occurred, the Dieringers had an automobile insurance policy with Motorists Mutual (the "Policy"). The Policy included a

medical payment provision that read as follows: "We [Motorists Mutual] will pay for reasonable expenses incurred for necessary medical and funeral services because of bodily injury * * *." (Docket No. 1, Policy, p. 5). Additionally, the Policy contained the following uninsured motorist provision:

> We will pay compensatory damages which an insured is legally entitled to recover from the owner or operator of:
> 1. An uninsured motor vehicle as defined in Sections 1., 2., and 4. of the definition of an uninsured motor vehicle because of bodily injury * * *.
> 2. An uninsured motor vehicle as defined in Section 3. of the definition of an uninsured motor vehicle because of bodily injury sustained by an insured. *Id*. at 17.

Further, the Policy defined "bodily injury" as "bodily harm, sickness or disease, including death that results." *Id*. at 1. The Dieringers sought recovery for Sandra's injuries from the accident under the foregoing provisions. But, Motorists Mutual rejected their claim.

{¶4} On April 13, 2011, the Dieringers filed their complaint alleging various personal injury claims against Sawmiller, his parents, and unidentified persons allegedly responsible for the negligent entrustment of the automobile to Sawmiller. Michael, Sandra's husband, asserted derivative claims for loss of consortium. The Dieringers also requested a declaratory judgment as to their rights and Motorists Mutual's duties under the Policy.

{¶5} After discovery was taken, including Sandra's deposition, Motorists Mutual filed its motion for summary judgment on January 13, 2012. One of the

bases for the motion was that Sandra did not suffer any bodily injury, as that term is defined in the Policy's medical payment and uninsured motorist provisions, and that consequently Sandra's injuries were not covered.[1]

{¶6} On February 6, 2012, the Dieringers filed their opposition to the motion for summary judgment. They argued that Sandra's Posttraumatic Stress Disorder ("PTSD") caused physical injuries, which brought her injuries under the terms of the Policy. Several medical studies and reports regarding PTSD-related physical injuries were attached to the Dieringers' opposition.

{¶7} Also attached was the affidavit of Dr. Joel Steinberg, a board-certified psychiatrist and internist. Dr. Steinberg's affidavit indicated that on August 2, 2011, he "performed a comprehensive psychiatric evaluation" of Sandra that lasted two hours and 20 minutes. (Docket No. 51. Exhibit 1, p. 1). He also indicated that Sandra underwent four psychological tests, took seven written tests regarding her emotional health, and answered a health questionnaire. Dr. Steinberg also stated that he reviewed the accident report and Motorists Mutual's motion for summary judgment and its recitation of the Policy's definition of bodily injury.

{¶8} Based on these items, Dr. Steinberg attested that as a result of Sandra's witnessing the accident, she "is suffering from significant psychiatric

---

[1] We note that Motorists Mutual also argued in its motion that summary judgment was appropriate because the Dieringers were not "insureds" under the Policy's terms. The trial court did not address this contention and Motorists Mutual has not raised it on appeal, so we need not consider it.

symptomatology [and] has psychiatric problems she never had before September 8, 2010, including my diagnosis that she is suffering from Posttraumatic Stress Disorder * * *." *Id*. at 2-3. Dr. Steinberg went on to state that Sandra's symptoms amount to a bodily injury under the Policy because PTSD causes the following physical harms:

> [PTSD] causes brain cell damage and objectively verifiable physical injury to the human brain;
> [PTSD] shortens the life expectancy of persons who suffer from it;
> [PTSD] causes atrophy of the memory circuits (hippocampal gyrus);
> [PTSD] is associated with the development of a number of other somatic (bodily) problems, such as the premature development of coronary artery disease and other conditions. *Id*. at 3.

{¶9} After hearing the arguments, the trial court granted Motorists Mutual's motion for summary judgment on February 7, 2012. The trial court's judgment included the following relevant language:

> While [the Dieringers'] theory is well reasoned, it flies in the face of existing case law that consistently excludes [PTSD] injuries from coverage under similar [policy] language. Following the line of cases in Ohio that the appellate courts have consistently applied [finding that] posttraumatic distress is not a bodily injury, the court declines [the Dieringers'] request to overturn the body of case law that consistently has declined to recognize the cause of action being pursued * * *. (Docket No. 52, p. 1-2).

As a result, the trial court found that the Policy's provisions for medical payments and uninsured motorist coverage did not cover Sandra's injuries, dismissed the Dieringers' claim against Motorists Mutual, and certified its order under Civ.R.

54(B).[2]  The Dieringers' claims against the other defendants remain before the trial court, where the proceedings have been stayed pending the disposition of this appeal.

{¶10} The Dieringers filed this timely appeal, presenting the following assignment of error for our review.

*Assignment of Error No. I*

**THE TRIAL COURT ERRED BY GRANTING SUMMARY JUDGMENT IN FAVOR OF APPELLEE MOTORISTS BECAUSE GENUINE ISSUES OF MATERIAL FACT EXISTED AS TO WHETHER APPELLANT SANDY DIERINGER SUFFERED "BODILY INJURY" AS THE RESULT OF THE AUTOMOBILE/PEDESTRIAN ACCIDENT WHICH OCCURRED ON SEPTEMBER 8, 2010. THE TRIAL COURT ERRED BY GRANTING SUMMARY JUDGMENT IN FAVOR OF THE APPELLEE MOTORISTS BECAUSE IN ORDER TO DO SO THE JUDGE HAD TO IMPROPERLY WEIGH THE UNDISPUTED MEDICAL EVIDENCE AND COMPLETELY IGNORE THE UNOPPOSED AFFIDAVIT OF JOEL STEINBERG, M.D. WHICH CLEARLY STATED THE OPINION OF DR. STEINBERG THAT SANDY DERRINGER SUFFERED "BODILY INJURY" AS DEFINED BY THE MOTORIST POLICY AND FURTHER THE AFFIDAVIT PROVIDED UNDISPUTED EVIDENCE THAT RECENT ADVANCEMENTS IN MEDICAL SCIENCE HAVE SHOWN THAT POSTTRAUMATIC STRESS DISORDER (AND/OR EXPOSURE TO EXTREME EMOTIONAL TRAUMA) CAUSES ACTUAL (OBJECTIVELY VERIFIABLE) PERMANENT PHYSICAL INJURY TO THE HUMAN BRAIN. THEREFORE THE TRIAL COURT COULD NOT**

---

[2] We note that the trial court's judgment only referred to the Policy's uninsured motorist provision and that Motorist Mutual's motion only discussed that provision and the medical payment provision. However, the Dieringers' complaint asserted that both these provisions and the Policy's property damage section covered Sandra's injuries. Since the property damage section, like the medical payments and uninsured motorist provisions, only covers "bodily injuries," we read the trial court's judgment to bar coverage for Sandra's injuries under all of the provisions alleged in the Dieringers' complaint.

**DECIDE THE ISSUE AS A MATTER OF LAW BECAUSE IT WAS AN ISSUE OF FACT TO BE SUBMITTED TO THE JURY.**[3]

{¶11} In their sole assignment of error, the Dieringers argue that the trial court improperly granted summary judgment in favor of Motorists Mutual and that instead the evidence shows that there is a genuine issue of material fact as to whether Sandra suffered a bodily injury that is covered under the Policy. Specifically, the Dieringers argue that the trial court improperly weighed the evidence, ignored Dr. Steinberg's affidavit, and disregarded medical evidence that PTSD causes physical injury. We disagree.

*Summary Judgment Standard*

{¶12} An appellate court reviews a summary judgment order *de novo*. *Hillyer v. State Farm Mut. Auto. Ins. Co.*, 131 Ohio App.3d 172, 175 (8th Dist. 1999). Accordingly, a reviewing court will not reverse an otherwise correct judgment merely because the lower court utilized different or erroneous reasons as the basis for its determination. *Diamond Wine & Spirits, Inc. v. Dayton Heidelberg Distr. Co*., 148 Ohio App.3d 596, 2002-Ohio-3932, ¶ 25 (3d Dist.), citing *State ex rel. Cassels v. Dayton City School Dist. Bd. of Ed.*, 69 Ohio St.3d

---

[3] This is an entirely improper form for an assignment of error. Assignments of error must indicate the purportedly erroneous trial court judgment and provide a concise statement of the assignment's basis. *See Russell v. United Missionary Baptist Church*, 92 Ohio App.3d 736, 738 (12th Dist. 1994) (describing the purposes of assignments of error and issues presented); Loc.R. 11(B) ("Assignments of error * * * should be specifically applied to the error claimed."). This paragraph-long assignment of error is clearly not concise and it provides an extended outline of argument, which is neither appropriate nor suggested. As a result, future assignments of error should not be presented for our review in this manner.

217, 222 (1994). Summary judgment is appropriate when, looking at the evidence as a whole: (1) there is no genuine issue as to any material fact, and (2) the moving party is entitled to judgment as a matter of law. Civ.R. 56(C). In conducting this analysis the court must determine "that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, [the nonmoving] party being entitled to have the evidence or stipulation construed most strongly in the [nonmoving] party's favor." *Id.* If any doubts exist, the issue must be resolved in favor of the nonmoving party. *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 359 (1992).

{¶13} The party moving for summary judgment has the initial burden of producing some evidence which demonstrates the lack of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). In doing so, the moving party is not required to produce any affirmative evidence, but must identify those portions of the record which affirmatively support his argument. *Id.* at 292. The nonmoving party must then rebut with specific facts showing the existence of a genuine triable issue; he may not rest on the mere allegations or denials of his pleadings. *Id.*; Civ.R. 56(E).

*PTSD's Coverage as a "Bodily Injury" Under Insurance Policies*

{¶14} We apply the precepts of contract interpretation when construing insurance policies. *See, e.g.*, *Yeager v. Pacific Mut. Life Ins. Co.*, 166 Ohio St. 71

(1956), paragraph two of the syllabus. Insurance coverage is assessed by interpreting the contract "in conformity with the intention of the parties or gathered from the ordinary and commonly understood meaning of the language employed." *King v. Nationwide Ins. Co.*, 35 Ohio St.3d 208, 211 (1988). When the policy is clear and unambiguous, the court "may look no further than the four corners of the insurance policy to find the intent of the parties." (Citation omitted.) *Crow v. Dooley*, 3d Dist. No. 1-11-59, 2012-Ohio-2565, ¶ 8.

{¶15} This matter revolves around our interpretation of the term "bodily injury" in the Policy. Courts throughout the state have found that bodily injury does not include emotional or mental distress. *See, e.g.*, *Bentley v. Progressive Ins. Co.*, 4th Dist. No. 02CA10, 2002-Ohio-6532, ¶ 28 (citing cases). Most relevantly, in *Erie Ins. Co. v. Favor*, 129 Ohio App.3d 644 (10th Dist. 1998), the court applied this interpretation and found that PTSD-related emotional injuries were not bodily injuries covered under an automobile insurance policy. *Id.* at 648-49.

{¶16} The Dieringers present a novel argument in an attempt to further develop its case law in light of recent medical advancements. Essentially, they claim that these advancements have allowed doctors to find that PTSD produces significant changes in neuroanatomy, including cell damage and brain atrophy, reduces life expectancy, and has a connection with other bodily diseases, including

coronary artery disease. The medical materials in the record are quite compelling in establishing that PTSD *may* lead to physical injuries that are covered under the bodily injury definition in the Policy. But, the materials do not suggest that physical injuries are certain to follow from a PTSD diagnosis.

{¶17} The Dieringers suggest that Dr. Steinberg's affidavit cures this problem. The affidavit includes his medical conclusions that (1) Sandra suffers from PTSD; and (2) she therefore has suffered physical injuries that are covered by the Policy.[4] However, there is no evidence in the record from which Dr. Steinberg could reach the second conclusion. As noted in the medical materials furnished by the Dieringers, there are a variety of available methods to map the living human brain, such as X-rays, computed tomography scans, magnetic resonance imaging, and magnetoencephalography. These methods are capable of showing the type of physical injuries that PTSD is alleged to cause. But, the record shows that Sandra did not undergo any of these scans. Without results from these scans, there is no evidence that Sandra has suffered any neuroanatomical changes, i.e. bodily injuries, as a result of her PTSD. Further, Dr. Steinberg's affidavit does not include any evidence that Sandra has suffered any of the other possible physical effects from PTSD.

---

[4] We note that while Dr. Steinberg is a preeminent physician, he is unqualified to give an opinion as to the legal applicability of an insurance policy's provisions.

{¶18} In sum, the Dieringers presented evidence that PTSD has the potential to cause physical injuries. However, they failed to present any evidence that Sandra herself was suffering from PTSD-related physical injuries. As a result, there is merely evidence that Sandra has a disorder that *could* have caused physical injuries. Consequently, the Dieringers failed to satisfy their burden of production to survive the summary judgment stage. In light of our finding, we cannot find that the trial court improperly weighed the evidence or disregarded the medical materials provided by the Dieringers with their opposition to Motorists Mutual's motion.

{¶19} Accordingly, we overrule the Dieringers' sole assignment of error.

{¶20} Having found no error prejudicial to the Dieringers, in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**SHAW, P.J., concurs in Judgment Only.**
**PRESTON, J., concurs.**

**/jlr**