[Cite as *Grange Ins. Co. v. Sawmiller*, 2014-Ohio-1482.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## AUGLAIZE COUNTY

GRANGE INSURANCE COMPANY,

    PLAINTIFF-APPELLEE,

    v.                                   CASE NO.  2-13-19

BRADLEY O. SAWMILLER, ET AL.,

    DEFENDANTS-APPELLEES,
    -AND-                                 O P I N I O N

SANDRA S. DIERINGER, ET AL.,

    DEFENDANTS-APPELLANTS.

Appeal from Auglaize County Common Pleas Court
Trial Court No. 2012-CV-51

**Judgment Affirmed**

Date of Decision:   April 7, 2014

**APPEARANCES:**

    *J. Alan Smith* for Appellants, Sandra and Michael Dieringer

    *Michael W. Sandner*  for Appellee, Grange Insurance Company

**PRESTON, J.**

{¶1} Defendants-appellants, Sandra S. Dieringer ("Sandra") and Michael Dieringer ("Michael") (collectively "the Dieringers"), appeal the Auglaize County Court of Common Pleas' grant of summary judgment declaring that Sandra's posttraumatic stress disorder (PTSD) was not covered under the automobile insurance policy issued by plaintiff-appellee, Grange Insurance Company ("Grange"). Because "bodily injury" as defined in the Grange policy does not, as a matter of law, include PTSD or physical symptoms stemming therefrom, we affirm.

{¶2} On September 8, 2010, Nancy Hertenstein ("Nancy") and her sister, Sandra, were walking side-by-side westbound on Parkway Drive in St. Marys Township, in Auglaize County, Ohio. Defendant-appellee, Bradley O. Sawmiller ("Sawmiller"), a minor, was driving a 1997 Chevrolet Silverado truck in the same direction on the same roadway at an excessive speed while texting his girlfriend. Sawmiller struck and killed Nancy with his truck. Sandra was not struck but witnessed the accident and its resulting effect on Nancy, suffering severe emotional distress thereby.

{¶3} In an earlier case, on April 13, 2011, the Dieringers filed a complaint against Sawmiller; Sawmiller's parents, Dana Gilbert ("Dana") and Gregory Sawmiller; and, Motorists Mutual Insurance Company ("Motorists Mutual"), the

Dieringers' automobile insurer. Sandra's claims stemmed from the severe emotional distress and PTSD she suffered as a result of the accident. Michael asserted a derivative claim for loss of consortium.

{¶4} Grange—Dana's automobile insurer, who covered Sawmiller—filed a motion to join the case, but the trial court denied the motion.

{¶5} Motorists Mutual filed a motion for summary judgment, arguing that its policy covers only "bodily injuries," and "bodily injuries" do not include emotional distress and PTSD.

{¶6} Sandra, on the other hand, argued that PTSD caused physical injuries to the brain falling within the term "bodily injury." Sandra submitted several medical studies and reports regarding PTSD-related physical injuries. She also submitted an affidavit from Dr. Joel S. Steinburg, a medical doctor certified in psychiatry and internal medicine, who opined that Sandra suffered from PTSD and "Major Depressive Disorder, Single Episode, Moderate" as a result of witnessing her sister's death on September 8, 2010. Dr. Steinburg based this opinion on his review of witnesses' statements, the accident report, and tests he conducted on Sandra during a two-hour-and-twenty-minute visitation on August 2, 2011.

{¶7} Dr. Steinburg further opined that Sandra's PTSD was a "bodily injury" because PTSD: causes brain cell damage and objectively verifiable physical injury to the human brain; shortens the life expectancy of persons who

suffer from it; causes atrophy of the memory circuits (hippocampal gyrus); and, is associated with the development of a number of other somatic (bodily) problems, such as the premature development of coronary artery disease and other conditions.

{¶8} On February 7, 2012, the trial court concluded that PTSD was not a "bodily injury" under the Motorists Mutual policy. Sandra then appealed that decision to this Court. *Dieringer v. Sawmiller*, 3d Dist. Auglaize No. 2-12-04, 2012-Ohio-4880 ("*Sawmiller I*").

{¶9} On February 10, 2012, following the trial court's decision in favor of Motorists Mutual, Grange filed a separate declaratory judgment action, which is the present case before this Court, asking the trial court to declare that Sandra was not entitled to recover under its policy because its policy also covers only "bodily injuries." Grange, like Motorists Mutual, argued that "bodily injury" does not include PTSD-related conditions. (Doc. No. 1).

{¶10} Grange filed a motion for summary judgment based on the trial court's earlier decision that PTSD-related conditions were not "bodily injuries" under the Motorists Mutual policy. (Doc. No. 42). In response, Sandra filed another affidavit by Dr. Steinburg opining that Sandra suffers from PTSD, and, based upon his examination of Sandra and the medical literature, Sandra suffered a "bodily injury" as that term is used in the Grange policy. (Doc. No. 45, attached).

{¶11} On October 22, 2012, we released *Sawmiller I*. 2012-Ohio-4880. There, we first noted that several other districts have held that PTSD-related injuries are not "bodily injuries" under automobile insurance policies. *Id.* at ¶ 15. We also found that the medical materials in the record demonstrated only that PTSD may cause physical injury, but physical injury is not certain. *Id.* at ¶ 16. We further concluded that Dr. Steinburg's opinion that Sandra suffered physical injury from her PTSD was not supported by any objective medical tests, such as X-rays, computed tomography scans, magnetic resonance imaging, or magnetoencephalography. *Id.* at ¶ 17. Finally, we noted that Dr. Steinburg did not aver that Sandra suffered from any other physical effects from PTSD. *Id.*

{¶12} On May 3, 2013, the trial court granted Grange summary, declaratory judgment based on *Sawmiller I*. (Doc. No. 48).

{¶13} On May 30, 2013, the Dieringers filed a notice of appeal, which was assigned appellate case no. 2-13-19 and is now before this Court. (Doc. No. 51). They raise two assignments of error.

**Assignment of Error No. I**

**The trial court erred by granting summary judgment because general issues of material fact existed as to whether appellant suffered bodily injury due to the affidavit of Dr. Steinburg, which offered the unopposed opinion that Sandra Dieringer sustained bodily injury.**

{¶14} The Dieringers argue in their first assignment of error that Dr. Steinburg's affidavit created a genuine issue of material fact as to whether Sandra sustained a "bodily injury" under the Grange policy, because he averred that Sandra suffered from PTSD, and the PTSD caused physical damage to her brain.

{¶15} An appellate court reviews a summary judgment order de novo. *Hillyer v. State Farm Mut. Auto. Ins. Co.*, 131 Ohio App.3d 172, 175 (8th Dist.1999). Accordingly, a reviewing court will not reverse an otherwise correct judgment merely because the lower court utilized different or erroneous reasons as the basis for its determination. *Diamond Wine & Spirits, Inc. v. Dayton Heidelberg Distr. Co.*, 148 Ohio App.3d 596, 2002-Ohio-3932, ¶ 25 (3d Dist.), citing *State ex rel. Cassels v. Dayton City School Dist. Bd. of Ed.*, 69 Ohio St.3d 217, 222 (1994).

{¶16} Summary judgment is appropriate when, looking at the evidence as a whole: (1) there is no genuine issue as to any material fact, and (2) the moving party is entitled to judgment as a matter of law. Civ.R. 56(C). In conducting this analysis the court must determine "that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, [the nonmoving] party being entitled to have the evidence or stipulation construed most strongly in the [nonmoving] party's favor."

*Id.* If any doubts exist, the issue must be resolved in favor of the nonmoving party. *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 359 (1992).

**{¶17}** The party moving for summary judgment has the initial burden of producing some evidence which demonstrates the lack of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). In doing so, the moving party is not required to produce any affirmative evidence, but must identify those portions of the record which affirmatively support his argument. *Id.* at 292. The nonmoving party must then rebut with specific facts showing the existence of a genuine triable issue; he may not rest on mere allegations or denials of his pleadings. *Id.*; Civ.R. 56(E).

**{¶18}** "Bodily injury" is defined in the Grange policy as "bodily harm, sickness or disease, including death that results." This definition is identical to the definition of "bodily injury" in the Motorists Mutual policy in *Sawmiller I.* (Grange Policy, Doc. No. 1, attached); *Sawmiller I* at ¶ 3. The only difference between *Sawmiller I* and this case is the extent of Dr. Steinburg's averments in support of Sandra's claim. In our prior case, we summarized Dr. Steinburg's affidavit as follows:

> Dr. Steinberg's affidavit indicated that on August 2, 2011, he "performed a comprehensive psychiatric evaluation" of Sandra that lasted two hours and 20 minutes. (Docket No. 51. Exhibit 1, p. 1).

He also indicated that Sandra underwent four psychological tests, took seven written tests regarding her emotional health, and answered a health questionnaire. Dr. Steinberg also stated that he reviewed the accident report and Motorists Mutual's motion for summary judgment and its recitation of the Policy's definition of bodily injury.

Based on these items, Dr. Steinberg attested that as a result of Sandra's witnessing the accident, she "is suffering from significant psychiatric symptomatology [and] has psychiatric problems she never had before September 8, 2010, including my diagnosis that she is suffering from Posttraumatic Stress Disorder * * *." *Id.* at 2-3. Dr. Steinberg went on to state that Sandra's symptoms amount to a bodily injury under the Policy because PTSD causes the following physical harms:

> [PTSD] causes brain cell damage and objectively verifiable physical injury to the human brain;
>
> [PTSD] shortens the life expectancy of persons who suffer from it;
>
> [PTSD] causes atrophy of the memory circuits (hippocampal-gyrus);

> [PTSD] is associated with the development of a number of other somatic (bodily) problems, such as the premature development of coronary artery disease and other conditions.
>
> *Id.* at 3.

*Sawmiller I* at ¶ 7-8.

{¶19} We began our analysis in *Sawmiller I* by noting that several districts had already concluded that "bodily injury," as defined in insurance policies similar to the Motorists Mutual policy, does not include emotional or mental distress. *Id.* at ¶ 15. We then noted that Dr. Steinburg's affidavit, nevertheless, did not create an issue of material fact whether Sandra suffered a "bodily injury," because there was no evidence from which he could conclude that Sandra actually suffered a physical injury. *Id.* at ¶ 17. In particular, we noted that Sandra did not have an X-ray, computed tomography scan, MRI, or magnetoencephalography and that "without results from these scans, there is no evidence that Sandra has suffered any neuroanatomical changes, i.e. bodily injuries as a result of her PTSD." *Id.* Dr. Steinburg also did not aver that Sandra had suffered any of the other possible physical effects from PTSD. *Id.* We concluded by saying "[I]n sum, the Dieringers presented evidence that PTSD has the potential to cause physical injuries. However, they failed to present any evidence that Sandra herself was suffering from PTSD-related physical injuries." *Id.* at ¶ 18. Because the affidavit

in *Sawmiller I* did not indicate that Sandra herself suffered from a PTSD-related physical injury, we did not need to decide the broader issue of whether PTSD-related injuries were included within the policy definition of "bodily injury."

{¶20} Dr. Steinburg's affidavit in this case includes the same averments he made in *Sawmiller I*, but he additionally avers that Sandra "suffered a physical injury and physical damage to her brain" and "suffered the destruction or deterioration of her brain cells" as a direct and proximate result of witnessing and perceptually experiencing the accident. (Doc. No. 45, Ex. 1). At oral argument, the Dieringers' counsel stated that Dr. Steinburg modified his affidavit to address the factual deficiency we noted in *Sawmiller I*—that Sandra, in fact, suffered from a PTSD-related physical injury. Much of the Dieringers' brief and the oral argument focused on whether Dr. Steinburg could offer this medical opinion based on the evidence in the record. We decline to go down that path. Instead, we elect to decide here what we declined to decide in *Sawmiller I*: whether "bodily injury" defined as "bodily harm, sickness or disease, including death that results" includes a PTSD-related injury. We answer this question "no."

{¶21} "'An insurance policy is a contract whose interpretation is a matter of law.'" *Lager v. Miller-Gonzalez*, 120 Ohio St.3d 47, 2008-Ohio-4838, ¶ 15, quoting *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241 (1978), paragraph one of the syllabus. "Contract terms are to be given their plain and ordinary

meaning." *Id.*, citing *Gomolka v. State Auto. Mut. Ins. Co.*, 70 Ohio St.2d 166, 167-168 (1982).

**{¶22}** As early as 1938, the Ohio Supreme Court concluded that "bodily injury," is "commonly and ordinarily used to designate an injury caused by external violence"; and therefore, should be "limited to bodily injuries resulting from physical or external forces known as accidents." *Burns v. Employers' Liability Assur. Corp. Ltd.*, 134 Ohio St. 222, 232-233 (1938). In 1989, the Ohio Supreme Court, interpreting an automobile insurance policy, quoted *Burns* for the proposition that: "'[t]he words 'bodily injury' are commonly and ordinarily used to designate an injury caused by external violence * * *.'" *Tomlinson v. Skolnik*, 44 Ohio St.3d 11, 14 (1989) (quoting *Burns* at 233), overruled on other grounds in *Schafer v. Allstate Ins. Co.*, 76 Ohio St.3d 353 (1996).

**{¶23}** Following *Tomlinson v. Skolnik*, multiple appellate districts in Ohio, interpreting the same or similar "bodily injury" definitions as in the Grange policy here, have held that emotional/mental injuries, distress, or anguish are not "bodily injuries." *Vance v. Sang Chong, Inc.*, 11th Dist. Lake No. 88-L-13-188, 1990 WL 174121, *3 (Nov. 9, 1990) (severe emotional distress/mental anguish); *Riechard v. Nationwide Mut. Fire Ins. Co.*, 2d Dist. Montgomery No. 13392, 1992 WL 361829, *2-3 ("[M]ost courts interpret the term 'bodily' as referring to the physical or corporeal, as opposed to mental, aspects of a person. Accordingly,

these courts hold that the term 'bodily injury' denotes actual physical harm arising from corporeal contact.") (emotional distress); *Bowman v. Holcomb*, 83 Ohio App.3d 216, 219 (12th Dist.1992) (same); *David v. Nationwide Mut. Ins. Co.*, 106 Ohio App.3d 298, 301-302 (1st Dist.1995) (same); *Bernard v. Cordle*, 116 Ohio App.3d 116, 121 (10th Dist.1996) (emotional injury); *Mains v. State Auto Mut. Ins. Co.*, 120 Ohio App.3d 534, 540-541 (10th Dist.1997) (same); *Craig v. Grange Ins. Co.*, 2d Dist. Montgomery No. 17675, 1999 WL 999799, *3-4 (Nov. 5, 1999) (emotional distress); *Hawthorne v. Migoni*, 5th Dist. Tuscarawus No. 2003 AP 07 0054, 2004-Ohio-378, ¶ 20 (same); *Johnson v. Am. Family Ins.*, 160 Ohio App.3d 392, 2005-Ohio-1776, ¶ 25 (6th Dist.) (emotional injury).

{¶24} In 1996, this Court favorably cited *Bowman v. Holcomb*, *supra*, for the proposition that "bodily injury" in a commercial general liability policy does not include emotional distress. *Erie Ins. Co. v. Stalder, et al.*, 114 Ohio App.3d 1, 7 (3d Dist.1996). That policy defined "bodily injury," in relevant part, as "physical harm, sickness or disease sustained by a person." *Id.* at 6.

{¶25} Several appellate courts have now specifically concluded that "bodily injury," defined identically or similarly as here, does not include PTSD-related injuries. *Erie Ins. Co. v. Favor*, 129 Ohio App.3d 644, 648 (10th Dist.1998); *Bentley v. Progressive Ins. Co.*, 4th Dist. Lawrence No. 02CA10, 2002-Ohio-6532, ¶ 29; *Johnson v. Progressive Ins. Co.*, 8th Dist. Cuyahoga No.

96068, 2011-Ohio-6448, ¶ 16-22. *See also Craig*, 1999 WL 999979, at *3 (favorably citing *Favor*, *supra*); *Clark v. Scarpelli*, 2d Dist. Montgomery No. 17883, 1999 WL 1206662, *7 (citing *Craig* for the proposition that PTSD claims are not "bodily injuries"). Furthermore, several appellate districts have concluded that physical symptoms stemming from mental/emotional injuries, distress, or anguish are also not included in the definition of "bodily injury." *Dickens v. General Acc. Ins.*, 119 Ohio App.3d 551, 553 (8th Dist.1997); *Migoni*, 2004-Ohio-378, at ¶ 19; *Dunn v. North Star Resources, Inc.*, 8th Dist. Cuyahoga No. 79455, 2002-Ohio-4570, ¶ 35-40; *Link v. Nationwide Ins. Co.*, 10th Dist. Franklin No. 01AP-824, 2002 WL 233616, *4-5 (Feb. 19, 2002); *Westfield Ins. Co. v. Porchervina*, 11th Dist. Lake No. 2008-L-025, 2008-Ohio-6558, ¶ 23.

**{¶26}** In light of the large body of longstanding case law, we join our sister appellate districts and hold that PTSD and physical symptoms stemming therefrom are not within the definition of "bodily injury" as defined herein. Because the Dieringers' claims all arose from Sandra's PTSD and her physical symptoms stemming therefrom, their claims are not covered under the Grange policy; and therefore, the trial court did not err by granting Grange summary, declaratory judgment.

**{¶27}** The Dieringers' first assignment of error is, therefore, overruled.

**Assignment of Error No. II**

**In the alternative, the trial court erred in granting summary judgment as it weighed the evidence when it made the determination that the affidavit of Dr. Steinburg was not sufficient because it did not contain reference to the results of an x-ray, CT scan, MRI, or magnetoencephalography.**

{¶28} In their second assignment of error, the Dieringers argue that the trial court impermissibly weighed Dr. Steinburg's affidavit and erroneously determined that it was not sufficiently supported by reference to an x-ray, CT scan, MRI, or magnetoencephalography.

{¶29} The Dieringers' second assignment of error is moot in light of our conclusion that PTSD and physical symptoms stemming therefrom do not fall under the definition of "bodily injury" provided in the Grange policy. Therefore, we decline to address this assignment of error. App.R.12(A)(1)(c).

{¶30} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**ROGERS, J., concurs.**

**/jlr**

**SHAW, J., dissents.**

{¶31} I respectfully dissent.

{¶32} The affidavit at issue in this case states in pertinent part:

> **7.    Based upon the parameters as previously set forth above it is my opinion within a reasonable degree of medical probability that Sandra Dieringer suffered physical injury and physical damage to her brain as a direct and proximate result of personally witnessing and perceptually experiencing the automobile/pedestrian accident which occurred on September 8, 2010, which resulted in the tragic death of Mrs. Dieringer's sister, Nancy Hertenstein.**

> **8.    Physical damage or physical injury to the brain is an injury that causes the destruction or deterioration of brain cells. It is my opinion, within a reasonable degree of medical probability that Sandra Dieringer suffered the destruction or deterioration of brain cells as a direct and proximate result of personally witnessing and perceptually experiencing the automobile/pedestrian accident which occurred on September 8, 2010.**

{¶33} The policy language at issue defines "bodily injury" in relevant part as "bodily harm, sickness or disease." In virtually every other summary judgment decision of this type, we have examined the specific words and language of the contract, statute or insurance policy at issue and compared it to the specific words and language of the affidavit or other testimony offered in order to determine whether the contractual, statutory or policy language has been reasonably and sufficiently invoked by the offered testimony. In other words, we look to the plain and ordinary meaning of the language and presume in the case of an insurance

policy that the intent of the parties is reflected in the language used in the policy. *See Westfield Ins. Co. v. Galatis,* 100 Ohio St.3d 216, 219, 2003 Ohio-5849, citing *Kelly v. Med. Life Ins. Co.* (1987), 31 Ohio St.3d 130 (1987), and *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241 (1978). This was the analysis we employed in *Sawmiller I* and in fact, it appears that the affidavit now before us was redrafted in response to *Sawmiller I*, in order to more precisely address the specific language used to define "bodily injury" in this insurance policy.

{¶34} Whether the affidavit now before us has been artificially "tweaked" to conform to the concerns we raised in *Sawmiller I* or whether the substantive allegations of the affidavit - particularly with regard to the sequence and causation of the brain cell injury - can be established by the requisite degree of scientific or medical proof at trial remains to be seen. However, these are issues to be resolved in the trial court, not the court of appeals. At this stage of the proceedings, the allegations of paragraphs seven and eight of the affidavit on their face, referring to "physical injury and physical damage to her brain" and "destruction or deterioration of brain cells," unequivocally meet any reasonable, plain and ordinary meaning of the words "bodily harm, sickness or disease" as used in the policy. As such, if credibly proven by the testimony at trial, the allegations of this affidavit would clearly establish the proximate causation of "bodily injury" as defined in this policy.

{¶35} Perhaps in order to avoid this reality, the majority now announces it will depart from the "actual language analysis" used in *Sawmiller I* and in our prior summary judgment decisions. Instead, the majority relies upon a broad public policy, well established in Ohio case law, (albeit perhaps based on older medical science), that has traditionally not permitted recovery for "emotional" or alleged brain damage where there is no "concurrent physical injury." And, in order to avoid the implication raised in the affidavit that medical science may be evolving as to the proximate and immediate causation of the brain cell damage, the majority itself seems to "tweak" the existing case law to now mean that "bodily harm, sickness or disease" can occur only where there is brain injury via some *external physical blow* to the head as opposed to an internal assault to one's perceptions, as in witnessing the traumatic death of a family member.

{¶36} However, such a distinction or limitation is not remotely suggested by the words "bodily harm, sickness or disease" used to define "bodily injury" in this case. Moreover, I am not convinced that any of the case authority relied upon by the majority is based upon expert testimony of the nature of the specific expert opinion testimony presented in paragraphs seven and eight of the affidavit in this case.

{¶37} In sum, it is my view that the approach now taken by the majority goes beyond the proper role of this court in determining a question of summary

judgment. I do not believe we should abandon our traditional approach, which has until now been based solely upon a sound and practical examination of the actual language used in the insurance policy and the actual language used in the affidavit, without regard to our own view of the preferred public policy merits of the issue.

**{¶38}** Based on the language of the affidavit and the language of the insurance policy in this case, I would sustain the assignment of error and remand the matter for trial to determine whether plaintiff can establish that witnessing the accident in this case proximately caused the brain cell injuries as alleged in the affidavit, thereby constituting "bodily injury" as defined by the insurance policy.

/jlr